CHARLES A. RILEY COMPANY v. W. T. SEARS & CO., INC., ET AL.

(Filed 5 April, 1911.)

### 1. Usury—Pleadings—Answer—Parties—Legal Representatives.

It is usury when unlawful interest has been knowingly taken, reserved, or stipulated for on a loan of money, directly or indirectly; and one knowingly acting in violation of our usury law by taking, receiving, reserving, or charging a greater rate of interest than 6 per cent per annum, either before or after the interest may accrue, "shall forfeit the entire interest, and when a greater rate has been paid, double the amount may be recovered by the party paying the same, or his legal representatives," and such may be recovered by way of counterclaim set up in the answer. Revisal, sec. 1951.

### 2. Usury—Contracts—Notes—Illegal Consideration.

When a debtor has paid his creditor the amount of a loan lawfully chargeable against him, and in addition thereto has given his notes for the balance of his obligation arising from an usurious amount of interest, agreed upon in making the loan, the creditor cannot recover on the notes in a suit brought for their collection.

### 3. Same.

When it appears by a written contract entered into between the parties that the debtor had borrowed an amount of money which he had obligated himself to repay at a certain rate per thousand feet of lumber to be cut from timber to be purchased by the money loaned, the payments not to be less than a certain monthly sum of money, which plan included the payment of an additional amount of money to that borrowed and the lawful rate of interest thereon; and it further appears that the debtor had repaid the amount actually borrowed, with more than the lawful interest, and had given his notes for the balance: *Held,* the notes being given for an additional amount to that of the money actually loaned, and legal interest, are based entirely on an usurious consideration, and no recovery thereon can be had.

### 4. Usury—Contracts—Partnership—Test.

When money is loaned to purchase standing timber and to be repaid at a certain rate per thousand feet when the timber is sawed, not less than a fixed sum per month, there is no partnership arrangement between the borrower and the lender, so as to take the matter from the operation or purview of the law against usury.

5. **Same.**

The obligation to repay a loan of money borrowed to undertake an enterprise which is not made dependent on the risks to be incurred or upon whether the venture or enterprise succeeds or fails, with a stipulation in the contract for its repayment in any event at a rate of interest exceeding that allowed by law, is usurious, and not a partnership contract.

6. **Same—Substitution—Accounting.**

A partnership, T. & Co., having borrowed money to be invested in standing timber, to be repaid at a certain rate per thousand feet of lumber cut therefrom, under an agreement held to be usurious, dissolved by the retirement of T., and S., the company of the firm, formed a partnership with a third person under the name of S. & Co., which soon thereafter became incorporated. Some ninety days before the time provided for the beginning of the various payments upon the loan agreed upon under the contract of T. & Co., the corporation, with the creditor's consent, cut lumber and paid off the debt, except that created by the usurious part of the contract. The corporation and the creditor, by a written agreement, entered into an accounting together and determined upon the amount due the latter under the contract: *Held*, by the consent of all the parties the corporation was substituted as successor to the original parties and the usury affecting the original transaction was not effaced or removed; (2) the agreement under which the accounting was had was with reference to and in acknowledgment of the original contract.

7. **Usury—Contracts—Fraudulent Intent—Proof.**

When the lender of money intentionally charges the borrower a greater rate of interest than the law allows, and his purpose stands clearly revealed on the face of the instrument, a corrupt intent to violate the usury law on the part of the lender is shown.

8. **Usury—Contracts—Estates—Loss—Parties—Privies—Receivers.**

The plea of usury is open to the parties and their privies, and may be made when by the transaction the debtor's estate is wrongfully depleted, and ordinarily by one having the legal right to protect the estate, as, in this case, a receiver of an insolvent corporation against which a usurious contract is sought to be enforced. Revisal, sec. 1222.

9. **Usury—Contracts—Forfeiture—Penalty—Pleadings—Amendments.**

In an action brought to recover money alleged to be due on a contract entered into between the parties, wherein the plea of usury is set up in the answer and a recovery is sought under our

statute of double the amount of the interest paid, the recovery sought is in the nature of a penalty; and when the facts are known or readily obtainable the law requires a definite statement in the pleading as to the time and amount, before allegations in such action are held to be sufficient, and such statement not having been made, on the facts in this case, no amendment to the pleadings should be allowed.

APPEAL from *Whedbee, J.,* at October Term, 1910, of NEW HANOVER.

Civil action, heard on exceptions to report of referee. The action was instituted by plaintiff against defendant corporation in behalf of himself and all other creditors, on the ground of insolvency, alleging that plaintiff's debt was about $27,000 and a valid lien upon a portion of the assets of defendant company. A receiver was duly appointed, and the bulk of defendant's assets or a large amount of same have been collected by said receiver and are held subject to the orders of the court made in the cause.

Pending the suit, John A. Arringdale intervened and, by petition, alleged that he was a creditor of defendant corporation to the amount of $6,242.33, with some interest, being a balance due and owing on a claim of defendant to the original amount of $7,442.33 and on which some payments had been made, and that such claim, to the extent of $6,000, evidenced by notes, was a valid lien on a portion of the assets, sufficient to pay the same, and $242.33 was evidenced by open account and entitled to share pro rata in the distribution of the assets.

This claim was resisted by plaintiff, Riley Company, and on the grounds (1) that it was for usurious interest, and void; (2) that in fact and in truth the claimant, John A. Arringdale, was a partner of defendant corporation and, as such, liable for the debts; (3) that, in any event, the lien alleged in favor of the petitioner had been displaced by reason of a subsequent agreement and transaction between the claimant and defendant company, providing for a substituted and later lien. That this last had not been registered, and that plaintiff's lien had thereby become a prior claim on the assets.

The receiver also answered, resisting the claim of the peti-

tioner, Arringdale, on the grounds (1) that same was usurious and void; (2) that, if not, the claimant was a partner, etc.

The cause was referred to E. S. Martin, Esq., who, after hearing the testimony and arguments of counsel, made a report, in which it was held, among other things, that the claim of the petitioner, Arringdale, was a valid claim and a prior lien on a portion of the assets to the amount of $6,000, to wit, the notes, with some interest, and that the open account was a debt to be paid pro rata with other unsecured and general creditors of the corporation. Plaintiff and the receiver filed various exceptions to the report and, on the hearing, certain additional findings of facts having been agreed upon by the parties, the court overruled the exceptions and gave judgment in favor of the petitioner, according to the report of the referee. The plaintiff and the receiver, having duly excepted, appealed to this Court.

*Herbert McClammy for Riley.*
*Davis & Davis for appellant Bellamy.*
*Iredell Meares and Rountree & Carr for Arringdale.*

Hoke, J., after stating the case: It appears, from the very full and careful report of the referee, that on 4 February, 1904, the claimant, John A. Arringdale, a party of the first part, entered into an agreement with S. P. Taylor & Co., a firm composed of S. M. Lloyd, S. P. Taylor, and W. T. Sears, as party of the second part, by which Arringdale loaned the said firm the sum of $12,000 to be used by them in the purchase of certain timber lands in the county of Columbus, N. C., to wit, 4,000 acres, known as the Flippo lands, and other timber and timbered land in that section, the amount purchased to be not less than 20,000,000 feet, and the said Arringdale was to have a lien on the lands and timber purchased and other property, mill, machinery, appliances, etc., engaged in the work, to secure the said $12,000 and the other sums agreed to be paid and obligations assumed under the contract by the parties of the second part. That the parties of the second part, pursuant to the agreement, soon after bought the Flippo lands, esti-

mated to contain between 15,000,000 and 16,000,000 feet of tim-
ber, but did not buy any other standing timber in said neigh-
borhood, though it or its successors "may have bought other
logs."

In reference to the repayment of this loan, the contract,
clearly contemplating that all the timber and logs described in
the contract shall be cut and shipped either as logs or after
they have been sawed into lumber, contains the provision that
the parties of the second part shall repay the $12,000 "without
interest," and, in addition, shall pay to the party of the first
part as much as 50 cents per thousand feet on all logs or lum-
ber shipped, to an amount not less than 20,000,000 feet, and as
to the time when these payments shall be made, makes stipula-
tion as follows:

"(4) Parties of the second part covenant and agree after
the expiration of 90 days from the execution of this agreement
to commence to repay and to pay to the party of the first part
the sum of $12,000 advanced to them as aforesaid, at the rate
of $2 per thousand feet for all the lumber cut and logs shipped,
which payments shall not amount to less than $500 per month,
payable on the 10th day of each month. The same is to be
credited by the party of the first part to the parties of the
second part each month as paid.

"(5) The parties of the second part further covenant and
agree that after they have repaid to the party of the first part
the sum of $12,000 cash advanced as aforesaid, which $12,000
is not to bear interest, they are to pay to the party of the first
part 50 cents per thousand for all logs shipped by them from
the mill, and also 50 cents per thousand feet on every thousand
feet of lumber and all kinds cut at their mill. These payments
are to be made on all logs shipped or lumber cut from the
time of the execution of this agreement, but these payments are
not to begin to be made until after the original $12,000 has been
repaid as aforesaid. And after that has been repaid the par-
ties of the second part are to make these payments in the same
manner as they were to repay the original $12,000, to wit, they
are to pay $2 per thousand and no less than $500 per month on

all logs cut, until they have paid to the party of the first part a sum equal to 50 cents per thousand feet on all logs shipped and 50 cents per thousand feet on all lumber cut from the beginning of this contract, after which time parties of the second part are to pay to the party of the first part monthly a sum equal to 50 cents per thousand feet upon each thousand feet of lumber cut during the last month. And it is hereby declared to be of the essence of this contract and the consideration for the loan of the $12,000, that parties of the second part are to purchase all of the timber possible in the section of the country hereinbefore named, and to pay to the party of the first part the 50 cents per thousand feet on all logs shipped and 50 cents per thousand feet on all lumber sawed as aforesaid: *Provided,* that the parties of the second part are not to pay anything for the lumber cut and used by them in structures to be used for the conduct of the business herein referred to."

And further:

"(7) Parties of the second part further covenant and agree to and with the party of the first part that if they fail to make any payment, or part payment, as hereinbefore stipulated to be made, or if they fail to perform any of the other agreements herein made at the time and in the manner stipulated, then all of said payments shall become immediately due and payable at the option of the party of the first part, including any and all damages which said party of the first part may suffer by reason of the breach of this contract, or any provision thereof; and the party of the first part is hereby authorized to forthwith take possession of all the property of the parties of the second part upon which a lien has been given, or is intended by this contract to be given, and to sell the same by public auction after due advertisement according to law, for the purpose of paying said debts and damages aforesaid."

That shortly after the execution of this contract, S. P. Taylor retired from the firm of S. P. Taylor & Co., receiving the cost price of his interest, and the assets of the firm were taken over by W. T. Sears and S. M. Lloyd, under the firm name of W. T. Sears & Co., and very soon thereafter this firm, with other associates, organized the defendant corporation, under

the name and style of W. T. Sears & Co., Incorporated, the firm assets all passing to the defendant corporation. That these changes all took place within the 90 days provided for in the contract for the beginning of the payments, and that any and all payments to John A. Arringdale for or on account of the contract were made to him by defendant company, incorporated.

From the additional facts agreed upon by counsel and embodied in the judgment of the court, it appeared that under and by virtue of the contract and down to and including 26 July, 1906, the defendant corporation had paid to John A. Arringdale the amount of the loan, $12,000, and in addition thereto $2,627.20=$14,627.20. It was further made to appear, that on 28 May, 1907, John A. Arringdale making claim for further amounts due under the contract, said Arringdale and defendant corporation had an accounting together and fixed upon the balance due at $7,442.33, and thereupon signed the following agreement:

"Whereas, on 4 February, 1904, S. P. Taylor & Co. executed a certain agreement or mortgage to the said party of the second part, whereby they were to pay to the said party of the second part certain amounts of money per thousand feet of lumber to be cut at Wananish, N. C., and secured by a lien upon certain property described in said agreement; and whereas W. T. Sears & Co., a partnership, succeeded to the rights and obligations of the said S. P. Taylor & Co., and W. T. Sears & Co., Inc., have succeeded to all the rights and obligations of said partnership and have assumed this indebtedness, which indebtedness has been fixed by agreement at $7,442.33 as the full amount at this time due under the said agreement:

"Now, therefore, for and in consideration of the premises and the further consideration of $1 in hand paid, the said party of the first part agrees to execute to the party of the second part certain notes of even date herewith in lieu of the said indebtedness, and it is further agreed that the said contract or mortgage above referred to, of date 4 February, 1904, shall remain in full force and effect until all the notes executed under this agreement are paid in full, and that the same shall

be secured by the said agreement or mortgage in as full and ample manner as the original debt was secured. And it is further agreed that on failure of the parties of the first part to pay any or all of the notes executed under this agreement, then the party of the second part may proceed to foreclose the lien contained in the agreement of 4 February, 1904, at any time after default in the payment thereof. And it is agreed by the party of the second part that when all the notes provided for under the terms of this contract are paid in full he will cancel said contract and release all liens claimed thereunder." Same being duly signed by "W. T. Sears & Co., Inc., John A. Arringdale."

That of this amount $1,200 was paid in money in May, 1907; $243 was in the form of an open account and the remainder of the claim was evidenced by a number of notes aggregating $6,000 and being the notes referred to in the above agreement and the same sued on or demanded in the present petition.

Upon these facts and findings, we are of opinion that the contract between these parties by which the money was obtained was usurious, and that no further collection may be had thereon. In reference to the case presented, usury may be said to exist where unlawful interest has been knowingly taken, reserved, or stipulated for on a loan of money. In its modern acceptation and in more comprehensive terms, it has been very well defined in the Georgia Code as follows: "Usury is the reserving or taking or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." And our statute on the subject declares, "That this taking, receiving, reserving, or charging a greater rate of interest than 6 per cent per annum, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest . . ." and in effect that where a greater rate has been paid, double the amount may be recovered by the party paying the same or his legal representative, or such amount may be set up by way of counterclaim, etc. Revisal 1905, sec. 1951. The courts of this country have been very generally insistent and alert in the enforcement of these regulations concerning usury, and our own

Court, in many well-considered decisions construing our statute, has established the principle expressly stated in the Code of Georgia, "That whenever, 'directly or by indirection,' unlawful interest has been knowingly taken or charged, the provisions of the statute must be applied." *Tayloe v. Parker,* 137 N. C., 418; *Carter v. Ins. Co.,* 122 N. C., 338; *Miller v. Ins. Co.,* 118 N. C., 612; *Gore v. Lewis,* 109 N. C., 539; *Arrington & Beavans v. Jenkins & Goodrich,* 95 N. C., 462. And decisions without number from other courts could be cited in approval of the principle. *Morgan v. Shernmerhorn,* 1 Paige, 544; *Weaver v. Burrett,* 110 Iowa, 567; *Mattheson v. Shinburg,* 94 Wisconsin.

In the contract we are considering, the $12,000 was originally furnished as a loan of money. It is so nominated in the bond, and more than once, and the referee properly so finds. In our view and by correct interpretation the charge stipulated for its use was 50 cents per thousand feet on an amount not less than 20,000,000 feet timber, whether shipped as logs or lumber, and provision is made for repayment of the principal with the stipulated charges within a comparatively short time, and by and under any possible interpretation within a reasonable time from the date of the contract. In its practical operation and as a matter of fact the lender in very little over two years from the time the repayment was to begin, received back his $12,000 and in addition $2,627.20; so that, if this was a loan, as the parties termed it, he had already received for this money when these notes now sued on were given the principal sum and nearly twice the amount of interest allowed by law. These notes, therefore, being given for an additional amount claimed, are based entirely on a usurious consideration, and no recovery thereon can be had. *Faison v. Grandy,* 126 N. C., 827; *Ward v. Sugg,* 113 N. C., 489. It is earnestly insisted for the petitioner that this is not a charge for money lent in the ordinary acceptation of things, but only a profit-sharing agreement, and as such not within the purview of the usury statute, and we are cited to 1 Paige on Contracts, 755; *Ovis v. Curtis,* 157 N. Y., 657; *Cript v. Barrow,* 108 N. Y., 187; *Scupps v. Crawford,* 123 Mich., 173, and other cases in sup-

port of the position. As stated in Paige and as instanced in some of the cases cited, there are decisions to the effect that in a general contract of partnership an agreement that one of the partners who advances money as capital shall receive from the proceeds of the business an annual return in excess of the legal rate of interest is not necessarily usurious. It has been held, too, that a loan of money for some business enterprise with a provision for sharing profits as a substitute for interest and in excess of the lawful rate may not be so. But while these cases may be recognized as sound and applied under proper conditions and when not a cloak for an usurious transaction, the facts do not, in our opinion, bring the present contract within the principle. This is no case where the lender entered into a partnership incurring responsibility for its debts and taking the full risks of the venture. Nor is it a loan of money in which the charge for its use is made dependent on such risks. But under the agreement, and whether the venture or enterprise succeeded or failed, there is stipulation for the repayment in any event of the full amount of the money lent and a charge for its use of 50 cents per thousand on not less than 20,000,000 feet of timber. In the citation from Paige the author further says: "If, however, the amount of probable profits is estimated in money and the share the lender is to receive is expressed in money and not expressed as a part of the profits nor made contingent on the earning of such profits, the transaction is usurious." And in the case of *Weaver v. Burrett, supra, Deemer, Judge,* delivering the opinion, quotes with approval from *Chancellor Walworth* in 2 Paige, p. 269, as follows: "Whenever, by the agreement of the parties, a premium or profit beyond the legal rate of interest for a loan or advance of money is, either directly or indirectly, secured to the lender, it is a violation of the statute, unless the loan or advance is attended with some contingent circumstances by which the principal is put in evident hazard. A contingency merely nominal, with little or no hazard to the principal of the money loaned or advanced, cannot alter the legal effect of the transaction. . . . Where there is a negotiation for a loan or advance of money, and the borrower agrees to return

the amount advanced at all events, it is a contract of lending:
. . . and whatever shape or disguise the transaction may
assume, if a profit beyond the legal rate of interest is intended
to be made out of the necessities or improvidence of the bor-
rower, or otherwise, the contract is usurious."

It is further contended that the plea of usury is not availa-
ble against these notes, because under the contract between the
claimant and the corporation of date 28 May, 1907, the same
were given as part of the purchase price of the property of
W. T. Sears & Co. as successors to S. P. Taylor & Co.

It is undoubtedly a sound proposition that if one buys prop-
erty and agrees to pay or take up a note affected with usury as
a part of the purchase price, he cannot maintain the defense
of usury against the note, and for the very sufficient reason
that as to him the obligation is not for the loan of money. The
case of *Stuckey v. Construction Co.,* 61 W. Va., p. 74, and
other cases cited, are apt authorities for this position; and in
our own Court *Doster v. English,* 152 N. C., 339, and *Yarboro
v. Hughes,* 139 N. C., 204, are in recognition of the principle.
But in our opinion no such case is presented here. As a conclu-
sion of law, it is not a correct interpretation of the contract of
1907, that the notes given were a part of the purchase price of
the assets of the partnership by the corporation, nor is there
any evidence in the record that would justify or uphold such
a finding of fact. Long before this, that is, shortly after the
loan of the money and before any payments were made on the
same, the facts show that S. P. Taylor, having retired from
the firm, on receiving the cost price of his interest, the partner-
ship of W. T. Sears & Co., composed of two of the original
parties, was formed and the firm, having taken over the assets,
was soon thereafter incorporated with others, and took over
the assets of the last firm and assumed all of its obligations.
So far as the contract concerning this loan of money was con-
cerned, it was an arrangement by which the corporation was
substituted as successor to the former parties, and this was
done with the knowledge and full recognition of the claimant,
Arringdale, and any and all payments under the original con-
tract have been made by the corporation, and any and all

transactions concerning it have been between the said Arring-
dale and the company. Accordingly, in reference to this, the
referee properly finds, among other things:

"4. That after the execution of the said agreement, date 4
February, 1904, between John A. Arringdale and the firm of
S. P. Taylor & Co., the said firm, in consequence of said agree-
ment, purchased or erected a mill at Wananish, and soon after
the purchase or erection of said mill, the firm of W. T. Sears
& Co., composed of the said S. M. Lloyd and W. T. Sears,
bought the interest of S. P. Taylor, and soon thereafter the
said S. M. Lloyd, W. T. Sears, and others organized the cor-
poration called W. T. Sears & Co., Incorporated, and all fur-
ther transactions under said agreement were had between said
Arringdale and said firm of W. T. Sears & Co. and said cor-
poration."

The subsequent contract of 1907 was only to embody the re-
sults of an accounting between the parties by which the amount
due under and by virtue of the original contract was ascer-
tained, its obligations recognized, and its liens preserved. Both
the recitals and the body of the contract show this to be its
purpose and that the accounting was only in recognition of the
position assumed by the parties in 1904 and acted on since. A
case, then, is presented in which, with the consent of all the
parties, the corporation was substituted as successor to the
original parties, and, on the facts in evidence, the usury affect-
ing the original obligation is not effaced or removed. In 29
Am. and Eng. Enc., p. 579, the position is recognized as fol-
lows: "In ascertaining whether a new obligation is a novation
through a change in the obligors so as to relieve it of the taint
of usury inherent in the original indebtedness, the fact that
the obligors on the new obligation and those on the old one are
not the same is not conclusive; though there is such a change,
the new obligation may still be merely a renewal of or a sub-
stitute for the original usurious indebtedness and so tainted
with the original usury." And the case of *Holland v. Cham-
bers,* 22 Ga., 193, cited in support of the principle, is not un-
like the one presented here.

The claims made that the plea in this case is not good for

lack of a corrupt intent is without force. The corrupt intent spoken of in the decisions is the intentional charging more for money lent than the law allows, and, according to our construction, the purpose stands clearly revealed on the face of the instrument. Nor can the position be maintained that the plea of usury cannot be made by the receiver because the same is personal to the debtor. The plea of usury is open to parties and their privies. Webb on Usury, p. 417. The theory is that usury is a transaction by which a debtor's estate is wrongfully depleted, and ordinarily one having the legal right to protect the estate can avail himself of the plea. In 7 Wait's Actions and Defenses, p. 630, it is said: "The right to recover back money paid for a loan, in excess of legal interest, where that right is allowed, is not limited to the borrower. The injury done by the usurer is to the estate of the borrower, and the right to receive back the amount of interest in excess of the legal rate passes to the assignee in bankruptcy," citing *Wheelock v. Lee,* 64 N. Y., 242; and to a receiver appointed in proceedings supplementary to execution, citing *Palen v. Johnston,* 46 Bard., 21; and see *Bank v. Wareham,* 49 N. Y., 635; *Trust Co. v. Bank,* 87 Fed., 143; *In re Stern,* 144 Fed., 956; *Dunford v. Bank,* 48 Fed., 271. Our statute on the subject, Revisal, sec. 1222, would seem to be conclusive: "Such receiver shall have full power to demand, sue for, collect, receive, and take into his possession all the goods, chattels, rights, etc., . . . and to institute suits for the recovery of any estate, property, damages, or demands existing in favor of said corporation, etc." While we hold that the notes sued on are void because based entirely on a usurious consideration, we think that on the pleadings the demand by the receiver for double the amount of the usurious interest should be disallowed. Both our statutes and authoritative interpretations of it are to the effect that "Usury must be paid in money or money's worth before an action can be maintained therefor, and the renewal of a note, given for usury, does not amount to such payment." *Rushing v. Bivens,* 132 N. C., 273. The recovery sought here is in the nature of a penalty, and this being true, when the facts are known or readily obtainable, the law requires definite state-

ment as to the time and amount before allegations in such action are held to be sufficient. 22 Pl. and Pr., p. 502; Webb on Usury, p. 556. While the facts are set forth fully in the report, the allegations in the answer are entirely too general to constitute a cause of action, and the facts do not present a case where an amendment should be now allowed in furtherance of a recovery. There is error, and the report and judgment will be reformed to accord with this decision.

Error.

### APPEAL BY PLAINTIFF.

HOKE, J. The Court having held, on the appeal by the receiver in this cause, that the transaction between the claimant, John A. Arringdale, and defendant corporation was simply that of a loan of money, on usurious interest, it follows that the appellant's position, that on the facts said Arringdale was a partner, is necessarily disallowed, and the claim of said petitioner, having been declared void *in toto* because based upon a usurious consideration, the question raised by appellant as to the priority of liens between the plaintiff and said Arringdale is no longer of moment. For like reason, it is not necessary to consider or pass upon the plaintiff's plea, that the contract between the corporation and Arringdale was usurious. There is conflict in the decisions as to whether and under what circumstances another creditor may, himself, plead usury in protection of the debtor's estate. The weight of authority would seem to be against entering such a plea, under ordinary conditions. 1 Paige on Contracts, sec. 503; Webb on Usury, p. 434. Without deciding the question, however, as it is no longer involved, and under the rulings made on the receiver's appeal, the report and judgment below, sustaining the claim of the petitioner, Arringdale, will be formally reversed, and, in our discretion, the costs of the appeal will be taxed against the appellant. *Rayburn v. Casualty Co.,* 142 N. C., 376; Revisal, sec. 1279.

Modified.