WALKER and ALLEN, JJ., and CLARK, C. J., dissent, in part.
Civil action. The complaint sets out two causes of action: (1) To recover damages for breach of contract in regard to the sale of a stock of goods; (2) to restrain the sale of plaintiffs' real estate under the power of sale, contained in a deed in trust from plaintiffs to H. A. Foushee, trustee, securing a note for $4,000, bearing interest from maturity, due twelve months after date, dated 31 August, 1909, payable by J. Henry Smith Company, a corporation, and J. E. and Emma D. Owens to J. Henry Smith and indorsed to R. H. Wright 31 August, *Page 104 
1909. On the back of the note are indorsed certain payments. The ground upon which the injunction is asked is that the note is usurious, and plaintiffs seek to eliminate the alleged usury and set up as a counterclaim or set-off the penalty of double the interest.
At the conclusion of plaintiffs' evidence, defendants offered none, and moved for judgment of nonsuit. His Honor rendered the following judgment:
"This cause coming on to be heard, and being heard at this term of the court, before his Honor, H. W. Whedbee, judge, and a jury, at the conclusion of the evidence offered by the plaintiffs, the defendant R. H. Wright, through counsel, waived any right to personal judgment against the plaintiffs, or either of them, for any balance claimed on the note, and moved judgment of nonsuit under all the evidence of the plaintiffs and the admissions of record; and, further, that the amount admitted to be in the hands of R. P. Reade, trustee, be turned over to the defendant R. H. Wright, to be applied to the note referred to in the pleadings. The motion was allowed.
"Thereupon it is ordered and adjudged by the court that the (129) plaintiffs take nothing by this action, and pay to R. H. Wright the sum of $664.25, less taxes, to be paid by the said trustee, it being the amount admitted to remain in the hands of the trustee after paying off and discharging prior encumbrances. The costs of this action will be taxed by the clerk of the court against the plaintiffs."
It appears that pending this action the real estate belonging to plaintiffs was sold under a first mortgage (that of defendant Wright being a second mortgage), and that after satisfying the first mortgage there is $664.25 only applicable to the second mortgage.
From the judgment rendered, the plaintiffs appealed.
1. In respect to the breach of contract in the sale of the goods, the facts are that the Smith Company's goods were being sold at auction by the receivers; there were other bidders at the sale; all had dropped out except plaintiff and defendant. Plaintiff Owens bid $1,465. Defendant bid $5 more. While this bid was being cried, defendant proposed to plaintiff that, if plaintiff would stop bidding and let defendant have the goods, defendant would sell them to plaintiff at the amount of defendant's bid, viz., $1,470, on condition that, in addition to said sum, plaintiff should pay defendant $800 on the note hereinbefore mentioned. Plaintiff accepted the proposition and stopped bidding, and the goods were "knocked down" to defendant. *Page 105 
As we understand the case, the plaintiff does not seek to enforce this
contract, or to recover damages of defendant for its breach.
Plaintiff could not recover, if nothing else appeared, for two reasons: first, because he failed to comply with the contract himself, and, secondly, because the enforcement of such an agreement, by which bidding at public sales is suppressed, is contra bonos mores, and the law will not assist either party to enforce such an agreement. Ingram v. (130)Ingram, 49 N.C. 189; Blythe v. Lovingood, 24 N.C. 22.
The plaintiff further testifies that he endeavored to raise the $2,270 in time to pay the defendant the $1,470 for the goods and the $800 on the note, but failed to do so, and then informed the defendant that he could not comply with the agreement.
Whereupon defendant said to plaintiff on Saturday morning: "I will tell you what I will do: if you will raise $1,880 on this thing, I will try to hold the offer open until 12 o'clock; but you must hurry up."
Plaintiff further testifies that he accepted the offer and raised the $1,880 and went to defendant before 12 o'clock Saturday to comply with the new agreement; that at 11 or 11:30 a. m. plaintiff saw defendant, who at once said: "You are too late; I have held the thing open as long as I could, and can't hold it any longer, and think I have sold it." The defendant had sold the stock between 10 and 12 a. m. that day for $2,600, to other parties.
We think this last proposition made by defendant to the plaintiff was a new proposition, independent of and disconnected with the first agreement made during the auction sale. At the time the defendant made the last proposition the plaintiff had abandoned the first, and the defendant was in the sole and undisputed ownership of the goods.
He then offered to sell them to plaintiff for $1,880, payable by 12 o'clock, and plaintiff accepted the offer. An offer to buy or sell becomes a binding agreement when the person to whom the offer is made accepts it and communicates his acceptance. 35 Cyc., 52 and 53.
This last contract has no connection with the first, which was an agreement to suppress bidding and void, and can be enforced without calling in the aid of the first or illegal contract.
"A new contract founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful." Marshall C. J., in Armstrong v. Toler,24 U.S. 257.
The subject is discussed at length in Electrova Co. v. Insurance Co.,156 N.C. 234, and many authorities cited; and in Jewelry Co. v.Joyner, 159 N.C. 644, which are cases in point. (131)
2. The plaintiffs Owens and wife Emma also aver in their complaint that the $4,000 note hereinbefore described and secured in the *Page 106 
deed in trust to Foushee is usurious, and they pray affirmatively "that the defendant H. A. Foushee, trustee, be restrained and enjoined from selling the house and lot of plaintiff Emma D. Owens on the first day of July, 1911, as he has advertised so to do, until it can be inquired into and determined by the court what amount, if any, is justly due and owing by the plaintiffs on the note secured by said deed of trust or mortgage."
His Honor seems to have held with plaintiffs that the note contained certain usurious charges, and eliminated them, but in adjusting the matter rested his calculation upon the decision of the Court in Churchill v.Turnage, 122 N.C. 426. To this ruling plaintiffs except and ask us to overrule that case.
The principle settled by that case is, that a debtor seeking the aid of a court of equity will have the usurious element eliminated from his debt only upon his paying the principal and legal rate of interest, the only forfeiture enforced against the creditor being the excess of the legal rate. This case was subsequently cited and approved in Cheek v. B. and L.Association, 127 N.C. 122.
In Churchill v. Turnage no novel principle was promulgated, for the opinion recognizes that "the precedents are both numerous and uniform."
The same principle was applied in 1847 in Ballinger v. Edwards, where it is held in an opinion by Chief Justice Ruffin that "the statute of usury is as binding in a court of equity as at law, except in cases where the borrower asks the assistance of a court of equity, and then the court will compel him to do equity by paying the principal and the legal interest."
To the same effect are the cases of Gore v. Lewis, 109 N.C. 539;Burwell v. Burgwyn, 100 N.C. 389; Purnell v. Vaughan, 82 N.C. 134;Beard v. Bingham, 76 N.C. 285.
In Purnell v. Vaughan, Chief Justice Smith says: "Equity will relieve against usury only upon the borrower's paying the principal (132) sum loaned and legal interest."
In Simonton v. Lanier, 71 N.C. 498, Bynum, J., says: "As the defendants came into this court to ask favors, and this is a court of equity as well as law, they will be required to do equity, that is, to pay the debt and legal interest thereon."
This principle of equity has been so thoroughly engrafted upon our jurisprudence that we do not feel disposed to disturb it. It applies alike to all classes of persons, married or single, and whether principal or surety.
The statute of 1907, chapter 110, Pell's Revisal, 3712a, has been called to our attention, but an examination of it shows that it has no bearing *Page 107 
whatever upon this case, and does not change the principles of equity declared and enforced, in the numerous cases we have cited, for more than half a century. This principle which has been enforced so long in this State is universally followed in other jurisdictions. The Supreme Court of the United States, in passing on the National usury law applicable to National banks (a statute almost exactly like ours), has held in a great many cases that, "It is an established principle of equity jurisprudence that he who seeks the aid of equity to be delivered from usury must do equity by paying or offering to pay the principal and lawful interest upon the money borrowed as a condition of granting the relief asked." Ency. of Supreme Court U.S., 850. In note 69 will be found collected a large number of cases from that Court recognizing and enforcing that principle.
For the reasons given, we are of opinion upon the question of usury his Honor's ruling was correct and must be affirmed.
Upon the other cause of action, relating to the breach of contract in the sale of the stock of goods, there must be another trial.
The costs of this Court will be paid by defendant.
The judgment of nonsuit is set aside and the cause remanded to be proceeded with in accordance with this opinion.
Error.