WILLIAM MONK v. J. GOLDSTEIN.

(Filed 15 November, 1916.)

**1. Usury—Contracts—Intent—Interpretation.**

Where in an action to recover for alleged usury charged, the evidence is conflicting as to whether the defendant loaned the plaintiff money at an excessive or usurious rate of interest, to purchase an automobile, taking title to himself to protect himself in the transaction, or whether the defendant purchased the automobile, and sold it to the plaintiff at an advanced price, or for a profit, the intent of the parties and not the form of the transaction should be considered.

**2. Usury—Trials—Burden of Proof.**

Where the plaintiff sues to recover for usury alleged to have been charged him for a loan of money to purchase an automobile, and the evidence is conflicting as to whether the defendant loaned the money, or purchased the car and sold it to the plaintiff for a profit, the burden of proof is upon the plaintiff to establish, by the preponderance of the evidence, the fact that the money was loaned to him under an agreement requiring him to pay more than the legal rate of interest; and, if paid, that the defendant received it as usury, or with knowledge that it was usury, or with the wrongful intent of violating our statute upon the subject.

**3. Instructions—Trials—Usury.**

Where the charge, construed as a whole, is free from error, it will not be condemned because an isolated paragraph, standing alone, may be misleading; and in this case the charge of the court upon the question of usury is approved.

CIVIL ACTION tried before *Webb, J.,* and a jury at August Term, 1916, of GUILFORD.

Plaintiff sued, under Revisal, sec. 1951, for $80, double the amount of usurious interest paid by him to defendant. He alleged and testified that he wanted to buy a Ford car for $530, and, not having the money to pay for it, he applied to the defendant for a loan of the amount, and he agreed to lend him the money upon a mortgage of the automobile and a lot. When asked by plaintiff what he would charge for the money, defendant replied that "he could not turn so small a deal for less than 20 per cent, and plaintiff, after stating that it was too much, agreed to take the money," defendant putting up $530 in order to get plaintiff a machine costing $530 and charging him $616, the difference between the $530 that the Ford car cost and the $616 being for the use of the money. Plaintiff further said that the car was sold to him outright by the Ford company, though the bill of sale was made to the defendant, this being done, as plaintiff contended, to cover up the real transaction as being a

usurious one, as defendant was only to advance the money for the car, and told the Ford agent "that plaintiff wanted a car, and to let him have it." Plaintiff drove the car from the garage and kept possession of it.

Defendant alleged and testified that he bought the car from the Ford agency and gave his note of $530 for it, and paid it in a short time afterwards. That he sold the car to plaintiff for $636, and there was no loan, but a straight-out sale, and he never told Monk that he would have to charge 20 per cent on so small a deal, but the true agreement was that he should buy the car from the Ford agency and then sell it to Monk. He testified that as plaintiff gave him a mortgage for only $616, he asked for the balance of $20 and plaintiff paid it to him, making $636 in all, the price of the car, and that the $20 was not a payment on the debt, as plaintiff contends.

Plaintiff further testified that the $20 was for the use of the money, and that defendant so stated at the time it was paid to him, and added that he would not give a receipt for it.

It was admitted that defendant received $50 from the Ford agencies, which was a bonus or premium paid to owners of their cars during that year. Plaintiff testified that Goldstein did not tell him about this, but kept the money.

Defendant also admitted that $570 had been paid on the debt, that is, $40 more than plaintiff contended was due, as principal on the debt.

There was much evidence on both sides as to the usury, plaintiff's tending to show that there was a loan and that he had paid $40 more than the legal interest, and defendant's that there was simply a sale of the car, and no loan.

The jury found that there was a loan and that plaintiff had paid $40 as usurious interest. Judgment was entered upon the verdict for $80 and cost. Defendant appealed. The only exception was to the charge of the court, which will be noticed hereafter.

*R. C. Strudwick and L. Herbin for plaintiff.*
*Stern & Swift, Wilson & Ferguson for defendant.*

WALKER, J., after stating the case: The test of usury is that there should be a contract for the forbearance of an existing indebtedness or a loan of money. *Struthers v. Drexel,* 122 U. S., 487; 29 Am. and Eng. Enc., p. 464, sec. 4, and note 5; *Smithwick v. Whitley,* 152 N. C., 366; or, as otherwise expressed, a profit greater than the lawful rate of interest, intentionally exacted as a bonus for the loan of money, imposed upon the necessities of the borrower in a transaction where the treaty is for a loan and the money is to be returned at all events, which is a violation of the usury laws, it matters not what form or disguise it may

assume. *Doster v. English,* 152 N. C., 339. The following rule was adopted in that case for our guidance: "In order to constitute a usurious transaction, four requisites must appear: (1) There must be a loan, express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid, as the case may be; and (4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned. The text-writers declare that these rules are applicable everywhere and under the usury laws of every State, and that unless these four things concur in every transaction it is safe to say that no case of usury can be declared. Tyler on Usury, p. 110; Webb on Usury, sec. 18, and cases cited; *Bennett v. Best,* 142 N. C., 168; *U. S. v. Wagoner,* 34 U. S., 378." The same rule, somewhat differently expressed, was stated in *MacRackan v. Bank,* 164 N. C., 24, 34, it being there added that the fourth element may be implied if all the others are expressed upon the face of the contract, or are established by sufficient evidence. What was said in *Yarborough v. Hughes,* 139 N. C., 200, is, perhaps, more to the point in this case: "The profit realized by Hughes, even if excessive, would not amount to usury, unless it was a mere device to cover and conceal an usurious transaction. It is less difficult to decide what is usury, when there is a loan of money, than in a case like this one. Interest is the premium allowed by law for the use of money, while usury is the taking of more for its use than the law allows. It is an illegal profit. 4 Blk. Com., 156. How can we say, on the face of this transaction, that as a matter of law it is usurious? If it was a reasonable advance, it surely cannot be illegal, for it was not excessive, and even if exorbitant it must have been resorted to as a mere cloak for usury. It would therefore depend upon the intent with which the increase was exacted. Referring to a state of facts much like those in this record, Tyler on Usury, p. 92, says: 'The inquiry often arises whether the transaction was a real sale in the regular course of business or a colorable sale, with intent to disguise a loan and evade the statute against usury; but if the case is found to be a sale and not a loan, the courts uniformly hold that usury cannot attach, and indeed a sale can in no case be *prima facie* evidence of usury; for it is valid unless it be a loan in disguise, and the burden of proof lies on the party claiming it to be usury, and it is necessary for him to show the circumstances which bring it within the statute.' In cases like this the intent is the essential element of usury, and this is of course a question of fact to be decided by the jury under proper instructions from the court. In this case the unlawful intent is not found."

The jury, of course, must be satisfied by a clear preponderance of proof that the debtor has paid more than the legal rate of interest, and

that the creditor received it as usury, or with the knowledge that it was usury, or, in other words, with the wrongful intent to violate the law by taking an excessive amount for the use of his money. *Bennett v. Best,* 142 N. C., 168. The object of the Legislature was to forbid the reserving, charging, or taking interest for the use of money at a rate in excess of 6 per cent per annum, under any contract where the relation of debtor and creditor is created or survives, and the absolute sale of property bona fide is not condemned by the law. It was held in *Jackson v. State,* 5 Ga. App., p. 181: "There is certainly no intimation in the language of this caption of a legislative intent to make penal the purchase of personal property or choses in action under any circumstances or at any price, no matter how low. The misdemeanor indicated by the title of the act is the reserving, charging, or taking of usury or excessive interest for money loaned or advanced at a greater sum than 5 per cent per month. In a bona fide sale and transfer of property for a cash consideration there is no interest or usury, and the relation of debtor and creditor is not created and does not survive the transaction. Only when the relation of debtor and creditor exists can the question of interest, excessive or otherwise, arise." The law, though, considers the substance and not the mere form or outward appearance of the transaction in order to ascertain what in reality it is. If this were not so, the usury laws might easily be evaded by false and deceitful methods. The inquiry, therefore, is what is the transaction in its substance and effect? These principles of the law upon the subject were carefully and fully explained to the jury, and they have found the essential fact in the case against the defendant, viz., that he loaned the money to the plaintiff with which to buy the car and exacted of him interest in excess of the lawful rate. The defendant excepted to but one instruction, which was taken from the body of the charge, but there was no error in it, especially when considered with its context, and we are required so to view it. The correctness of an instruction should be tested by examining the charge as a whole, and if, as an entirety, it is free from error, an assignment predicated upon an isolated paragraph, which standing alone might be misleading, must fail. *Kornegay v. R. R.,* 154 N. C., 389; *Revis v. City of Raleigh,* 150 N. C., 348; *Aman v. Lumber Co.,* 160 N. C., 369; *Bird v. Lumber Co.,* 163 N. C., 162. This is the settled rule in other jurisdictions. 4 S. E. Dig., p. 2067, sec. 295. The criticism of the selected paragraph is directed more against its verbal accuracy than its substantial correctness. We do not think it is erroneous even if construed alone, and contrary to the rule we have stated, because, when brought to its final analysis, it is equivalent to an instruction that if the transaction was, in good faith and in reality, a sale instead of a loan, then there was no usury, and this was correct. We think that there is no just ground of complaint that the instruction was not clear enough.

An intelligent jury could not have failed to understand it, even standing by itself; but when considered in view of the other parts of the charge, its meaning is perfectly apparent. It was really a repetition of what had before been said by the court in stating the contentions of the parties, and the court was merely affirming, as sound law, the particular contention of defendant, and directing a verdict accordingly, provided the jury found the facts to be as he had stated in his testimony they were.

The charge was scrupulously fair and impartial, and, judged by every test of the law, it complied fully with the requirement of the statute as to instructing juries.

No error.