**ASSOCIATED STORES, INC., Plaintiff,**

v.

**INDUSTRIAL LOAN AND INVEST-MENT CO., Defendant.**

**Civ. No. 1089.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Argued Dec. 11, 1961.

Decided Jan. 9, 1962.

J. C. B. Ehringhaus, Jr., Raleigh, N. C., for plaintiff.

Howard E. Manning, Raleigh, N. C., for defendant.

CRAVEN, District Judge.

■ This is a civil action heard on objections to Conclusions of Law made by Mr. Charles Young of the Raleigh Bar, serving as Special Master. That he served with painstaking care and fairness appears from the fact that neither party to this action filed objections to his Findings of Fact. At the hearing no dissatisfaction with the Findings of Fact was indicated to the Court. Pursuant to Rule 53(e), F.R.Civ.P. 28 U.S.C.A. the Court thereupon accepts the Master's Findings of Fact (they comprise 35 typed pages) and adopts each and every one of them verbatim and as fully and completely as if set out herein.

This is a difficult and complex law suit. The Special Master conducted hearings extending over 25 days. The record of testimony came to 2,250 pages.

Briefly, the Findings of Fact of the Special Master tend to show that plaintiff, Associated Stores, Inc. (hereinafter called "Associated") was engaged in the business of selling on installment sale contracts vacuum cleaners and sewing machines and in order to prosecute its business needed to borrow substantial sums of money from time to time. Defendant, Industrial Loan and Investment Company (hereinafter called "Industrial") agreed to provide to Associated monies from time to time by means of purchasing from Associated conditional sales contracts at a discount. The discount was usually 11 per cent. The parties dealt with each other from sometime in 1955 until December, 1957 and operated under 2 contracts referred to in the Findings of Fact as the master contract of January, 1955 and the master contract of May, 1956.

Although the form of the transactions was that of purchase and sale of individual conditional sales contracts, in one or the other of the written contracts or in the endorsement of each conditional sales contract Associated guaranteed the payment of the principal amount due to Industrial. The dispute and indeed the result turns upon this critical factor.

I. In the transactions between Associated and Industrial are the elements of usury present?

■ Industrial strenuously contends that the transactions between Industrial and Associated were purchases and sales at discounts rather than loans. Giving to these transactions a name does not necessarily resolve the problem. It is common knowledge that the method of financing used in this case is referred to by financially sophisticated people as the discounting of commercial paper. In the opinion of the Court the finding of the Special Master that both parties regarded the transactions as sales of conditional contracts at a discount and the failure to find that either party regarded the transactions as being loan transac-

tions is not of controlling importance to a determination of the ultimate question. That question is simply whether or not the Usury law of North Carolina applies to these transactions.

 "It has been repeatedly held, in this State, that while one may buy a note from another, at any price that may be agreed upon, the bargain being free from fraud or unlawful imposition, if the purchaser requires the indorsement of the seller as a guaranty of payment, the transaction, as between the immediate parties thereto, is in effect a loan, and will be so considered, within the meaning and purport of our laws against usury." Bynum v. Rogers, 49 N.C. 399; Ballinger v. Edwards, 39 N.C. 449; McElwee v. Collins, 20 N.C. 350; Sedbury v. Duffy, 158 N.C. 362.

"A profit, greater than the lawful rate of interest, intentionally exacted as a bonus for the loan of money, imposed upon the necessities of the borrower in a transaction where the treaty is for a loan and the money is to be returned at all events, is a violation of the usury laws, it matters not what form or disguise it may assume." Doster v. English, 152 N. C. 339, 67 S.E. 754; Monk v. Goldstein, 172 N.C. 516, 90 S.E. 519.

It is a half-truth to call the transactions between Associated and Industrial "sales at a discount". Note the arrangement of paragraphs in 91 C.J.S. under Usury § 19 the title appears "Purchase of Choses in Action at Discount". A subordinate paragraph is entitled "Effect of indorsement or other guaranty". The editors then point out that the authorities present some 4 different views of the effect of endorsement or guaranty. North Carolina is annotated as one of the jurisdictions holding such a transaction usurious, citing Bynum v. Rogers, 49 N.C. 399.

The only decision within North Carolina that has come to my attention that is *contra* is In re Eby, D.C., 39 F.2d 76. This is a memorandum decision in which the District Judge reversed the Findings of Fact and Conclusions of Law of a Special Master without citation of authority (except for 2 cases arising in other jurisdictions). The Conclusions of Law and the reasoning of the Special Master are contained in the decision, with citations of authority, and are more persuasive to me than is the opinion of the District Judge.

A rose is a rose is a rose, and smells the same by any other name. The parties contemplated and contracted that in all events Industrial was to get back all of its monies advanced plus approximately 11 per cent. This invokes the application of the Usury law of North Carolina—if other essential elements are present. The shorthand way of expressing this conclusion is to call it a loan transaction, which conclusion of law I adopt and confirm.

Having decided that (1) there was a loan of money with (2) an understanding that principal shall be repayable absolutely, it remains to consider whether or not there was (3) a greater profit than is permitted by law paid or agreed to be paid, and (4) whether the contract was entered into with an intention to violate the law. These elements together constitute usury. Ector v. Osborne, 179 N.C. 667, 103 S.E. 388, 13 A. L.R. 1207.

The last ingredient, sometimes referred to as "corrupt intent" is simply the intentional charging of more for money lent than the law allows. Riley Co. v. W. T. Sears & Co., 154 N.C. 509, 70 S.E. 997. The provision contained in each master contract for 11 per cent discount is a revelation of purpose to exact a greater profit than allowed by law on the face of the instrument.

"The corrupt intent mentioned in the books consists in the charging or receiving the excessive interest with the knowledge that it is prohibited by law and the purpose to violate it. Our statute makes it usury if the interest is *knowingly* charged or received at the unlawful rate." Ector v. Osborne, 179 N.C. 667, 103 S.E. 388, 13 A.L.R. 1207; MacRackan v. Bank, 164 N.C. 24, 80 S.E. 184, 49 L.R.A.,N.S., 1043.

Industrial contends that it cannot be charged with the intention of exacting a greater profit than allowed by law from Associated because it expected to get its excess profit from the original obligors on the conditional sales contract. It is a bit hard to square this argument with the fact that Industrial saw fit to require Associated to guarantee payments of the conditional sales contract obligors. However that may be, in my opinion under the facts of this case payment by conditional sales contract obligors constituted payment by Associated for purpose of the application of the usury law. The Courts do not distinguish between direct and indirect payments. 91 C.J.S. "Usury" § 28(c) note 41. I believe that the Special Master rightly concluded that the 4 elements of usury existed in this case.

II. To what transactions between Industrial and Associated do the penalties for usury apply?

Industrial strenuously urges that its liability to Associated was secondary to the primary liability of each customer of Associated who executed a conditional sales contract and that Associated's obligation on each conditional sales contract was a contingent liability, i. e., to pay Industrial only if the makers of the note did not pay and that the Usury law would in no event apply to payments made by the customers. In my opinion this argument lacks validity for the reason that it fails to give effect to the overall agreement and obligation of Associated (as contained in both master contracts) to guarantee the payment of principal to Industrial absolutely. This argument is simply a restatement of the one already discussed supra.

▆ When the plaintiff initiated this action it sought equitable relief and obtained a temporary restraining order from the Judge of the Superior Court. This order restrained and enjoined the defendant from collecting payments due the defendant by any of the plaintiff's customers. The order remained in force from December 18 until dissolved by order of Judge Gilliam on February 4, 1958, during which time the plaintiff collected some $16,000.00, none of which has been turned over to Industrial.

Does this equitable relief mitigate the stringency of the Usury law?

"The principle is well settled by numerous decisions of this court that where a debtor seeks the aid of the court of equity on the ground that his debt is tainted with usury, he may have the usurious element, if any, eliminated from his debt only upon his paying the principal of his debt with interest at the legal rate. In such case, he is not entitled to the benefit of the statutory penalties for usury." Smith v. Bryant, 209 N.C. 213, 183 S.E. 276; Bailey v. Inman, 224 N.C. 571, 31 S.E.2d 769; Owens v. Wright, 161 N.C. 127, 76 S.E. 735. In Waters v. Garris, 188 N.C. 305, 124 S.E. 334, the Court said "plaintiffs are not entitled * * * the penalties * * * for * * * usurious interest *and* (italics mine) to injunctive relief. Having come into a court of equity, they must do equity before they can ask its aid; and what constitutes doing equity in a case where usurious interest has been reserved, or paid in advance, is payment of the principal debt less the usurious excess of interest paid. * * * If the contract for the usurious interest be executory, the sum equitably due is the principal debt with legal interest thereon."

It must be admitted that the decisions establishing this rule of equity are factually dissimilar. Usually the debtor has sought to restrain foreclosure on property he has mortgaged to secure the debt. Here the debtor sought to restrain collection on accounts which, in effect, may be said to have been assigned to secure the debt. The difference to me does not seem to be so great as to call for the application of the equitable rule in the mortgage case and the denial of it in this one.

▆ The equitable exception to the harshness of the usury penalty [1] was the

---

I. Under former statutory law there resulted a forfeiture of principal as well as interest.

result of an attempt to reach a just result without doing more violence than necessary to early statutory law. But history aside, it is now well settled that one seeking equitable relief from a usurious contract must, as a condition thereof, do everything that equity requires. 55 Am.Jur. "Usury" #108. In most jurisdictions, equitable relief against a usurious contract is granted only upon the condition that the debtor shall pay, or offer to pay, the principal of his debt and legal interest thereon. Ibid.

■ The Special Master concluded in effect that Associated is entitled to recover double the amount of interest charged on fully paid up contracts because no equitable relief was sought as to such contracts and that Associated must pay principal and the legal rate of interest as to most of the transactions coming under the second master contract because it sought equitable relief with respect to those transactions. In my opinion the Conclusions of Law by the Special Master as to this aspect of the case are sound and ought to be confirmed.

■ The plaintiff contends that Findings of Fact numbered 53 and 54 support and require a conclusion of law that any liability or obligation of Associated to Industrial was paid and satisfied in full with respect to any balance outstanding on any contract the collection upon which was awarded to Industrial by the order of Judge Gilliam dated February 4, 1958. This amounts to simply an argument that because Judge Gilliam saw fit to allow Industrial to administer directly an attempt to collect on the conditional sales contracts assigned it that the effect of Judge Gilliam's order is to substitute for the right to receive payment the right instead to collect and attempt to collect from the original obligors. In my opinion this contention lacks merit and is supported by nothing contained in Judge Gilliam's order dated February 4, 1958. I know of no rule of law that Industrial's right to look to Associated excluded its right to ask the Court for permission to attempt direct collection from obligors on conditional sales contracts. In my opinion no estoppel arises on the Findings of Fact nor on the face of the order of Judge Gilliam dated February 4, 1958.

■ To be sure Industrial had a duty to exercise reasonable diligence in attempting to collect upon individual customer contracts so as to mitigate and diminish its claims against Associated. I do not construe the Findings of Fact to require a conclusion of law that Industrial failed to perform this duty, and I overrule Associated's objection to the failure of the Special Master to so find.

Since all contracts under the first master contract were paid in full before the institution of this action and no equitable relief was sought by Associated as to them, I conclude that Associated is entitled to recover from Industrial twice the amount retained by Industrial as "discount" on contracts purchased under the January, 1955 master contract which amounts to $54,184.62.

Some of the contracts transmitted to Industrial under the second master contract have been paid in full and as to them I conclude that Associated is entitled to recover twice the amount of the net discount retained which amounts to $37,224.32.

Since Associated sought and obtained equitable relief with respect to contracts which had not been fully paid I conclude that Industrial is entitled to recover the principal amount of such outstanding accounts plus interest at the rate of 6 per cent which amounts as of December 17, 1957 to the sum of $343,602.37. I further conclude that Industrial is entitled to recover interest on the principal balance of $324,153.18 from December 2, 1958 until paid for the reasons set forth in the Special Master's Findings of Fact and Conclusions of Law.

At the time of the filing of the referee's report (October 13, 1960) there were 871 contracts on which the obligors were still paying Industrial. Before a final money judgment can be entered a further accounting must be had of these contracts.

Other adjustments between the parties must be made as contained in the Special Master's Conclusions of Law.

The Court overrules each and every objection of the parties to the Conclusions of Law and adopts and confirms each and every one of the Conclusions of Law of the Special Master and directs the Clerk to enter judgment pursuant to Conclusion of Law "S" to effect the following:

"(1) That Industrial have and recover against Associated the following amounts:

"(a) The sum of $343,602.37 without interest.

"(b) Interest on the sum of $324,153.18 from December 2, 1958 until paid.

"(2) That Associated have and recover against Industrial the following amounts:

"(a) The sum of $44,155.50, representing the amount in the reserve account of Associated, with interest from December 18, 1957.

"(b) The sum of $3,348.46, representing the amount held in Associated's special reserve account as of January 5, 1959, with interest from January 5, 1959.

"(c) The sum of $19,980.00, representing the fair market value of 666 machines repossessed by Industrial and not sold at the time of this hearing, with interest from February 2, 1959.

"(d) All amounts received by Industrial representing collections and sales of machines made by Industrial since December 17, 1957, with interest from the date of each such receipt.

"(e) The sum of $19,493.50 representing the amount charged Associated's reserve account for the purchase of the Best Sew-Vac contracts which were never received by Associated, with interest from October 3, 1957.

"(f) The sum of $54,184.62 representing the amount Associated is entitled to recover on account of usury paid on contracts transmitted to Industrial under the 1955 master contract, with interest from the date of the judgment.

"(g) The sum of $37,224.32 representing the amount Associated is entitled to recover on account of usury paid on contracts transmitted to Industrial under the 1956 master contract and paid in full prior to the institution of this action, with interest from the date of the judgment.

"3. Upon payment by Associated to Industrial of such amounts as are due it under the preceding paragraphs, Associated is entitled to have re-transferred to it, simultaneously, all contracts transmitted to Industrial by it upon which any customers' balances remain outstanding."