Filed 4/3/13  In re Rachel M. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re RACHEL M., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES , <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AMANDA M., <br><br> Defendant and Appellant. | F066113 <br><br> (Super. Ct. No. JD126054) <br><br> **O P I N I O N** |

### THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Louie L. Vega, Judge.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Theresa A. Goldner, County Counsel, and Jennifer E. Feige, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Detjen, Acting P.J., Franson, J., and Peña, J.

**INTRODUCTION**

Amanda M. (mother) appeals from the juvenile court's orders denying her petition pursuant to Welfare and Institutions Code section 388,[1] finding adoption as the permanent plan for her child, Rachel M., and terminating mother's parental rights. We reject mother's contentions and affirm the juvenile court's orders.

**FACTS AND PROCEEDINGS**

*Initial Proceedings*

On February 18, 2011, the Kern County Department of Human Services (department) detained Rachel M., who was four years old.[2] On or about February 24, 2011, a petition was filed pursuant to section 300 alleging that Rachel was at substantial risk of physical harm because mother was abusing substances, suffered from a mental illness, "flips out," failed to get adequate treatment for her mental illness, and could not provide Rachel with regular care. The petition further alleged Rachel was at substantial risk of harm because of mother's willful or negligent failure to properly maintain the residence, which was filthy and full of cockroaches.

The petition alleged mother's residence was filthy and unhealthy because it was filled with spiderwebs containing dead cockroaches, cookware that was covered in cockroach droppings, and dead cockroaches in the refrigerator. The petition further alleged that mother failed to provide Rachel with adequate medical care, food, clothing, and shelter. Mother has a history of residing with her children in dirty homes, having unstable housing, and receiving preventative services in the past that have not been successful.

---

[1]     Unless otherwise designated, all statutory references are to the Welfare and Institutions Code.

[2]     The department also detained Rachel's eight-year-old sister, Mary M., who is not subject to this appeal.

Rachel's sister, Mary M., was being treated for a cold between February 3 and February 11, 2011. Mary began feeling sick at school on February 10. On February 18, 2011, a social worker with the department met with a nurse and a police officer at the hospital where Mary had been admitted as a patient. Mary was suffering from pneumonia, dehydration, and renal failure. Mother admitted suffering from depression, "flipping out," hitting her head against a wall and blacking out, and to the use of methamphetamine as recently as December 2010. A visit to mother's home revealed the squalor set forth in the petition. Mother resided with her father who was verbally abusive.

Mother was arrested for drugs in 2004 and had her first referral to the department for neglect of Mary that year. Mother had further referrals to the department for neglect in 2006, 2007, 2010, and January 2011. Mother had a history of living in unstable and dirty housing with her children. Mother admitted that when Mary was three years old, she began to use methamphetamine. Mother explained that she used methamphetamine for three years, stopped for a year, and relapsed in December 2010. Mother described herself as an "ex tweaker" and denied current use of methamphetamine.

Mother was diagnosed with depression by her primary care physician and was prescribed an antidepressant medication, but was non-compliant on her medication due to bad side effects. The social worker expressed concern to mother that she was not receiving treatment for her mental illness, had a recent drug history, did not seek proper medical treatment for Mary, and was in a harmful relationship with her father. The detention hearing was held on February 25, 2011.

At the disposition hearing, mother waived her right to a contested hearing and admitted the allegations in the petition. Prior to the disposition hearing, mother was homeless for a time, but again resided with her father. Although mother did not avail herself of a department inspection of the father's residence, the exterior of the residence remained unsafe for the children to be returned to mother's care.

3

At the conclusion of the disposition hearing on April 20, 2011, Rachel was removed from mother's custody and mother was granted reunification services. Mother was ordered by the juvenile court to participate in counseling for parenting, comply with mental health counseling and treatment, including taking any recommended medications, and submit to random drug testing. The court further ordered mother to enroll in substance abuse counseling. Mother was granted weekly supervised visitation for two hours.

*Review Hearings*

A report by the department that was prepared for a review hearing on October 20, 2011, indicated that as of October 2011, mother failed to enroll in a counseling for parenting program. As of September 2011, mother began taking medications prescribed by her mental health physician. The department had not yet confirmed mother's diagnosis. Between April 29, 2011, and September 16, 2011, mother was scheduled for 14 drug tests. Mother failed to test six times and was presumed to test positive for drug use. Mother had three positive drug tests, including her most recent test on September 16, 2011. Mother had four negative tests and one excused test. Mother had not yet enrolled in counseling for substance abuse.

Mother missed only two of her weekly visits with Rachel. One of these was because mother was visiting her own mother out of state. The visits were described by the social worker as of adequate quality and concluded without incident. Mother had received six months of reunification services. The department concluded that mother had made minimally acceptable efforts toward compliance with her plan and had minimally availed herself of reunification services. The department recommended continued reunification services. On October 20, 2011, the juvenile court found that mother was in minimal compliance with her reunification plan and ordered continued reunification services for her.

4

A review hearing was held on May 9, 2012. The department reported that during the second six-month review period mother failed to enroll in a counseling for parenting program and it did not appear mother was complying with mental health counseling for a majority of the review period. Mother requested a reassessment of her mental health status on February 8, 2012, "so that she could begin taking her medications." Mother was residing in a sober living home. Her participation there was described as minimal and her progress as satisfactory. Mother was expected to complete the program in mid-October 2012. Mother had three negative drug tests during the review period and three drug tests that were positive or presumptively positive for her failure to test.

Mother failed to consistently visit Rachel during this review period, missing seven visits due to illness, failure to show up, or being out of town. When mother did visit, the visits were of good quality. The department recommended termination of mother's reunification services because after 12 months, mother had only recently begun to participate in counseling for substance abuse and was not enrolled in a counseling for parenting program. The department noted that mother failed to yet demonstrate sustained sobriety.

On May 9, 2012, the juvenile court found mother had made only minimal progress toward alleviating or mitigating the causes of the child's placement out of mother's home and only minimally acceptable efforts to avail herself of reunification services. The court ordered termination of mother's reunification services and set the cause for hearing pursuant to section 366.26. The court ordered supervised visitations every other week for one hour.

### Hearing Pursuant to Sections 388 and 366.26

In August 2012, mother filed a petition for reconsideration of the juvenile court's order terminating her reunification services. Mother stated that she had completed nearly all of the components of her plan, had been testing negatively for drug use, had visits

5

with Rachel of good quality, and a change in the court's order would rekindle the parent-child relationship.

The department's section 366.26 report stated that of 69 visits mother was eligible to have with Rachel, mother attended 50 visits. When the report was prepared, Rachel had not lived with her mother for 18 months. The visits were generally described as positive and consistent. Rachel, however, did not rely on mother to meet her daily physical and emotional needs. The department recommended termination of mother's parental rights with a permanent plan of adoption.

Rachel was described as a good candidate for adoption because of her young age, absence of physical or emotional problems, and the fact that her caretaker was willing and able to commit to adopting her. Rachel had been in the caretaker's home for 17 months and the caretaker loved Rachel as though she was the caretaker's biological daughter. Rachel had also established a bond with the caretaker. The social worker preparing the department's report stated that Rachel had a minimal visiting relationship with mother and Rachel's relationship with mother was not significant enough to cause Rachel severe emotional trauma if the court terminated the parent-child relationship.

The department filed a separate report responding to mother's section 388 petition on October 4, 2012. Mother reported that she was still living with her father who remained her sole means of support. Mother stated that Rachel would have her own room and mother would apply for Medi-Cal to insure that Rachel's medical needs would be met. Mother stated that she felt ready to be a parent again.

After trying unsuccessfully to enter mother's residence for a week, the social worker entered it on September 21, 2012, and found a very strong, unpleasant stench in the residence that smelled partly like insect spray. The odor was noticeable throughout the residence. Mother explained that the residence was recently sprayed for roaches. The inside of the home was otherwise neat and organized. One room, however, was cluttered with items, dusty, and difficult to walk through. The social worker was not granted

6

access to the backyard, but from a window it appeared to be filled with all types of damaged or unused items.

Mother was enrolled in a parenting class in which she was an active participant. Mother had a mental health assessment in April 2012. Mother reported symptoms of depression and anxiety. The department had a letter indicating mother had completed her psychiatric evaluation in June 2012 and had a medication follow-up appointment in July 2012. As for substance abuse counseling, mother was as of June 2012 in phase two of a treatment program and was making good progress. Mother was scheduled to complete the program in October 2012. Mother had three negative drug tests in May and June of 2012. A hair sample provided by mother equivalent to three months of growth indicated that mother had not consumed illegal drugs.

The hearings on mother's section 388 petition and on the section 366.26 proceeding were conducted on October 4, 2012. Mother's counsel argued that mother had changed and requested that the juvenile court reinstate mother's reunification services. Minor's counsel concurred with the arguments of mother's counsel.

The juvenile court noted that the case had been going on for over 18 months and, although mother had taken some positive steps, she still had some issues. The court denied mother's section 388 petition, terminated mother's parental rights, and selected adoption as Rachel's permanent plan, finding that Rachel was likely to be adopted by clear and convincing evidence.

## DISCUSSION

### *Section 388 Petition*

Mother contends the court erred in denying her section 388 petition because she made a showing that her circumstances had changed. We disagree.

A parent may petition the juvenile court to vacate or modify a previous order on grounds of change of circumstance or new evidence. (§ 388, subd. (a).) The parent must also show that the proposed change would promote the best interests of the child. (§ 388,

7

subd. (d); Cal. Rules of Court, rule 5.570; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 (*Stephanie M.*).)

It was mother's burden of proof to show there was new evidence or there were changed circumstances that made a change of the children's placement in their best interests. (§ 388; *Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310 (*Marilyn H.*).) If the petition presents any evidence that a hearing would promote the best interests of the child, the court will order the hearing. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415 (*Jasmon O.*).) The petition must be liberally construed in favor of its sufficiency. (*Ibid.*)

The mandate for liberal construction of a section 388 petition, however, does not entitle a petitioner to avoid describing the changed circumstances or new evidence. Section 388 and the pertinent rule of court (Cal. Rules of Court, rule 5.570) require the petition to allege changed circumstances or new evidence that requires changing a prior order. (*Jasmon O.*, *supra*, 8 Cal.4th at p. 415.)

As the moving party, it was mother's burden of proof, by a preponderance of the evidence, to show there was new evidence or there were changed circumstances that called for a change of the previous order denying reunification and that reunification services would be in the children's best interests. (§ 388; *Stephanie M.*, *supra*, 7 Cal.4th at p. 317.)

The parent bears the burden of showing, in a section 388 petition, that both a change of circumstance exists *and* that the proposed change is in the best interests of the child. A petition only alleging changed circumstances, which would lead to a delay in the selection of a permanent home, to see if a parent could eventually reunify with a child at some future point, does not promote stability for the child or the child's best interests. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

8

Once reunification efforts have been terminated, the child's interest in stability and permanency is a juvenile court's primary concern, outweighing a parent's interest in reunification. (*Marilyn H., supra,* 5 Cal.4th at p. 309.) Children have a fundamental independent interest in belonging to a family unit and they have compelling rights to be protected from abuse and neglect and to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child. (*Id.* at p. 306.)

We review the record in the light most favorable to the judgment. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) When a court rejects a detriment claim and terminates parental rights, the appellate issue is whether the juvenile court abused its discretion in so doing. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.) To conclude there was an abuse of discretion, the proof offered must be uncontradicted and unimpeached so that discretion could be exercised in only one way, compelling a finding in the appellant's favor as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528.)

Mother had a history of earlier referrals to the department, as well as of methamphetamine addiction dating back several years. Mother waited a year, and after the court terminated reunification services, before trying to take parenting classes and address her mental health issues. Mother waited a substantial amount of time before addressing her drug addiction. Mother seemed to have gained control of her drug problem by the summer of 2012, after she had lost reunification services. Mother had only recently become sober and did not demonstrate a sustained period of sobriety.

It took the department a week to gain access to mother's home. Although improved from its earlier filthy state, mother's home smelled of insect spray, had one room full of clutter, and debris in the backyard that made that area unsafe for her child. The home was apparently still being infested with cockroaches and was still not an ideal

9

environment for a young child. Also, mother was still living with her father, a point that was an early concern of social workers.

The juvenile court accurately observed that mother still had issues. Mother was changing her circumstances, but had failed to change her circumstances as required for the court to grant her section 388 petition. For mother to have the juvenile court revisit the issue of whether she was entitled to further reunification services, she had to demonstrate more than changing circumstances. Mother failed to do so. We have little doubt that mother loves Rachel. Mother, however, also failed to show how it would be in Rachel's best interests to maintain a relationship with mother.

## DISPOSITION

The court's orders denying mother's petition pursuant to Welfare and Institutions Code section 388 and terminating her parental rights pursuant to Welfare and Institutions Code section 366.26 are affirmed.