Filed 1/8/15  In re V.J. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.J. et al., Persons Coming Under the Juvenile Court Law. | |
| TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GUILLERMO J. et al., <br><br> Defendants and Appellants. | F069429 <br><br> (Super. Ct. Nos. JJV066118H, JJV066118J, JJV066118K) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from orders of the Superior Court of Tulare County.  Hugo Loza, Commissioner.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant Guillermo J.

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant C.J.

Kathleen Bales-Lange, County Counsel, and Carol E. Helding, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Cornell, J. and Poochigian, J.

Appellant Guillermo J. appeals from the juvenile court's order terminating his parental rights to his eight-year-old son V.J., seven-year-old daughter C.R.J., and six-year-old daughter M.J. Guillermo contends the juvenile court erred in not applying the sibling exception to adoption (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(v)).[1] The children's mother, C.J. (mother), joins. We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

In March 2011, V.J. and C.R.J., then both four years old, and two-year-old M.J. were removed from mother's custody along with their then 15-year-old brother G.J., 13-year-old brother Xavier R., 12-year-old brother Isaiah J., 11-year-old sister Dulce J., nine-year-old brother D.J., six-year-old sister Catalina J., and five-year-old brother C.N.J., because of mother's drug use and the unsafe and unsanitary condition of the home. Guillermo is the father of all of the children except Xavier. At the time of the children's removal, Guillermo was incarcerated. Guillermo and mother have an extensive history of domestic violence.

The children were placed in four different foster homes. Xavier was placed in one; G.J. and Isaiah in a second; Dulce, D.J., Catalina, and C.N.J. (the middle children) in a third; and V.J., C.R.J. and M.J. (the youngest children) in a fourth. The children were placed in Dinuba, except the youngest children who were placed in Visalia.

The juvenile court exercised its dependency jurisdiction over the children and ordered reunification services for mother. The court denied Guillermo and Xavier's father reunification services but ordered supervised visitation for Guillermo. The court ordered supervised sibling visitation twice a month without the parents.

In September 2012, at a contested 12-month review hearing, the juvenile court terminated mother's reunification services and set a section 366.26 hearing. By that time, mother was having unsupervised visits with the children. According to the Tulare

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

County Health and Human Services Agency (agency), mother was allowing Guillermo to participate in her visits despite a no-contact order. In addition, the agency believed mother and Guillermo were living together.

In December 2012, an adoptions social worker assessed the children and determined they were not adoptable because the foster parents were not willing to adopt them. The agency recommended the juvenile court implement a permanent plan living arrangement for them with the goal of legal guardianship. The agency informed the court that the children had unsupervised visits with mother twice a week for four hours each visit and enjoyed spending time together as a family.

In February 2013, at the section 366.26 hearing, the juvenile court found the children were not adoptable and ordered them into a planned permanent living arrangement. The court ordered supervised weekly visits for mother and Guillermo and set a permanency plan review hearing (section 366.3 hearing) for August 2013.

In June 2013, the foster mother for the three youngest children told the agency she wanted to adopt them. She said the children were frustrated and confused by their frequent contact with their parents when there was no plan to reunify with them. She was willing to maintain their relationship with their siblings. In addition, the middle children were asking to be adopted by their foster parents.

In August 2013, at the section 366.3 hearing, the juvenile court set a section 366.26 hearing as to the middle and youngest children. By that time, G.J. had reached the age of majority. He wanted the court to dismiss its dependency jurisdiction as to him but he wanted to continue visiting his siblings.

The agency recommended the juvenile court terminate Guillermo and mother's parental rights to the three youngest children at the section 366.26 hearing. Their foster parents planned to move with the children to a new home approximately 147 miles away. The agency also recommended the court order legal guardianship for the middle children and dismiss its dependency jurisdiction as to them.

3

The agency recommended the juvenile court discontinue Guillermo and mother's visitation with the middle children. Guillermo and mother told one of the foster mothers she should "give [the children] up" and encouraged the children to misbehave.

On May 8, 2014, the juvenile court convened a contested 366.26 hearing. V.J. testified he was close to his siblings and wanted to continue to see them. C.R.J. testified she enjoyed her visits with her siblings and would like to live as a family again. M.J. testified she liked visiting with her siblings. She said she mostly played with Catalina and would like to live with her again.

Pauline P., the youngest children's foster mother, testified it was important for the youngest children to maintain their relationships with their siblings and that she would help them maintain those relationships.

Pamela M., the middle children's foster mother, testified she and Pauline were friends and had already discussed how to maintain sibling contact between the middle and youngest children. Pamela lived on a ranch and planned to have the youngest children ride horses and bicycles and play at the ranch. They also planned to spend some holidays together and maintain telephone contact between the children.

At the conclusion of the hearing, the juvenile court found that though the children had an emotional connection to each other, it was not so strong as to outweigh the benefit the youngest children would receive from adoption. Consequently, the court terminated Guillermo and mother's parental rights as to V.J., C.R.J., and M.J. This appeal ensued.

**DISCUSSION**

Guillermo and mother (appellants) contend the juvenile court erred in failing to apply the sibling exception to adoption because the children had shared experiences, close relationships and strong bonds. We disagree.

Once the juvenile court has terminated reunification services, its focus shifts to the children's need for permanency and stability. (*In re Marilyn H*. (1993) 5 Cal.4th 295, 309.) If, as here, the children are likely to be adopted, adoption is the norm. (*In re*

4

*Celine R*. (2003) 31 Cal.4th 45, 53 (*Celine R*.).)  The statutory presumption is that termination is in the children's best interests and not detrimental.  (§ 366.26, subd. (b); *In re Lorenzo C*. (1997) 54 Cal.App.4th 1330, 1342.)

The juvenile court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances in section 366.26 provides a compelling reason for finding that termination of parental rights would be detrimental to the child.  (*Celine R*., *supra*, 31 Cal.4th at p. 53.)  Further, it is an opposing party's burden to show that termination would be detrimental under one of the statutory exceptions.  (*In re Zachary G*. (1999) 77 Cal.App.4th 799, 809.)

The sibling relationship exception to terminating parental rights applies when the juvenile court finds there is a compelling reason for determining termination would be detrimental to the child because it would substantially interfere with the child's sibling relationship.  (§ 366.26, subd. (c)(1)(B)(v).)  Factors to be considered include the nature and extent of the relationship, whether the children were raised with a sibling in the same home and whether the children have a strong bond with a sibling.  The court must also consider whether ongoing contact is in the children's best interests, including the children's long-term emotional interest, as compared to the benefit of legal permanence through adoption.  (*Ibid*.)  The purpose of this exception is to preserve long-standing sibling relationships that "serve as anchors for dependent children whose lives are in turmoil."  (*In re Erik. P*. (2002) 104 Cal.App.4th 395, 404.)

"The sibling relationship exception contains strong language creating a heavy burden for the party opposing adoption."  (*In re Daniel H*. (2002) 99 Cal.App.4th 804, 813.)  The parent must first show:  (1) the existence of a significant sibling relationship; (2) that terminating parental rights would substantially interfere with that relationship; and (3) it would be detrimental to the child if the relationship ended.  (*In re L.Y.L*. (2002) 101 Cal.App.4th 942, 952.)  After the parent shows a sibling relationship is so strong that its severance would be detrimental to the adoptive child, the court then decides whether

5

the benefit to the child of continuing the sibling relationship outweighs the benefits of adoption. (*Id*. at pp. 952-953; *In re Naomi P*. (2005) 132 Cal.App.4th 808, 823.)

When a juvenile court rejects a detriment claim and terminates parental rights, the appellate issue is not whether substantial evidence exists to support the court's rejection of the detriment claim but whether the juvenile court abused its discretion in so doing. (*In re Jasmine D*. (2000) 78 Cal.App.4th 1339, 1351.) For this to occur, the proof offered would have to be uncontradicted and unimpeached so that discretion could be exercised only in one way, compelling a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571; *In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.) Based on our review of the record, we conclude the juvenile court properly exercised its discretion in rejecting appellants' argument.

Here, V.J., C.R.J. and M.J. were very young in March 2011 when they were removed from mother's custody. By the time of the May 2014 hearing, they had been separated from their siblings for over three years. Though the children maintained a close and loving relationship during that time of separation, appellants have not shown that severing the sibling relationship would cause the youngest children detriment. By all accounts they were adjusting well to their adoptive parents and looked to them to meet their needs. The juvenile court's failure to apply the sibling relationship exception can be affirmed on appellants' failure to show detriment alone.

Further, there is no reason to believe that terminating appellants' parental rights would substantially interfere with the sibling relationships. Pauline and Pamela understood the value of preserving the sibling relationships and intended to maintain contact between the siblings.

Appellants contend it is improper to consider a prospective adoptive parent's promise to maintain sibling contact in deciding whether the sibling relationship exception to adoption exists. Such a promise, they argue, is illusory and cannot be enforced, citing *In re C.B*. (2010) 190 Cal.App.4th 102 (*C.B.*). However, the pages appellants cite in *C.B.*

6

pertain to the parent-child relationship exception (§ 366.26, subd. (c)(1)(B)(i)) not the sibling relationship exception. The *C.B.* court stated: "[T]he court cannot … terminate parental rights based upon an unenforceable expectation that the prospective adoptive parents will voluntarily permit future contact between the child and a *biological parent* …." (*C.B., supra,* at p. 128; italics added.) Further, appellants have not shown that the holding in *C.B.* has been applied to the sibling relationship exception or that the juvenile court relied on Pauline and Pamela's promises to maintain sibling contact in deciding to terminate their parental rights. Most importantly for the purposes of this appeal, appellants failed to show that terminating their parental rights would be detrimental to V.J., C.R.J. and M.J.

## DISPOSITION

The judgment is affirmed.