[Sac. No. 5513. In Bank. July 21, 1944.]

HELEN ROESCH et al., Plaintiffs and Appellants, v. CLARA P. DE MOTA et al., Defendants; E. O. ERICKSON et al., Defendants and Appellants; VICTOR LAND AND MINERAL COMPANY (a Corporation), Cross-Complainant and Appellant.

Cornish & Cornish and Maurice H. Roach for Plaintiffs and Appellants.

Virgil M. Airola, Jesse H. Steinhart and John J. Goldberg for Defendants and Appellants.

Philip C. Boardman for Cross-complainant and Appellant.

SHENK, J.—This action was brought by the plaintiffs as parties beneficially interested in certain mining property in Calaveras County, for an accounting and to enjoin a scheduled sale by the trustee under two deeds of trust. Plaintiff Roesch is the beneficiary under a junior deed of trust held by her, and which was foreclosed. At the foreclosure sale John S. DeLancey bought the property and holds title for the benefit of plaintiffs and Calaveras Central Mining Corporation and Calaveras Central Gold Mining Co., Ltd., as their interests may appear. The other two plaintiffs are judgment creditors of the defendants Calaveras Central Mining Corporation and

Victor Land and Mineral Company, respectively. The defendants Clara P. De Mota and Antonio Mota were not served nor did they appear in the action, although they are the holders of the two notes and deeds of trust sought to be foreclosed by the defendant E. O. Erickson, as trustee under the deeds of trust. Defendant Calaveras Central Gold Mining Co., Ltd., is the lessee of the real property. For the purposes of this opinion, Calaveras Central Mining Corporation will be referred to as Calaveras, and Victor Land and Mineral Company will be referred to as Victor.

On December 19, 1923, Victor as the owner of the mining property obtained a loan from the Manuel Estate Company, a corporation, in the sum of $15,000 and executed a promissory note in that amount, secured by a deed of trust on the property. The note is admittedly usurious. It called for interest at the rate of 1 per cent per month, compounded. After the maturity of that note, which was in default, Victor obtained a second loan from the Manuel Estate Company and executed another note of date January 5, 1925, for $4,500, also secured by a deed of trust, and also usurious.

On March 6, 1926, Victor, whose affairs had become financially precarious, entered into an agreement with Harry Sears, whereby he obtained an option for four months to purchase and acquire at ''the times and for the considerations and upon the terms and conditions as hereinafter stated'' all the right, title, interest and estate of Victor in and to the land and personal property of the mine. One of the terms and conditions was that Sears organize a corporation under the laws of Delaware with a capitalization of $1,000,000, divided into one million shares of the par value of $1.00 each, of which Victor was to receive 150,276 shares. Another term of the agreement was that Sears would within four months ''pay and discharge or secure the complete release and discharge of all indebtedness now owing by the corporation [Victor] . . . to the Manuel Estate Company, a corporation . . . and being the indebtedness now due and owing from two promissory notes executed by the said corporation [Victor] . . . to the said Manuel Estate Company'' [describing them]; ''that there is now accrued and unpaid upon said promissory notes not only the full amount of the said principal sums of said indebtedness but also interest thereon

in accordance with the terms and conditions of said respective promissory notes, together with costs, charges, expenses, insurance premiums, taxes, charges for attorneys fees, costs of advertising, and other miscellaneous expenses incurred by the said Manuel Estate Company . . .'' The agreement further provided for the payment and discharge or release and discharge of other obligations of Victor, including those in favor of the plaintiffs Anderson and Montreeville, and that during the life of the option any action taken by Manuel Estate Company or other creditors ''shall be and is at the entire risk of the party of the second part [Sears] and that there is no duty imposed upon or to be undertaken by the party of the first part [Victor] to avoid any of such actions or the enforcement or the collection of any of such indebtedness owing by the said corporation . . . and that this option and agreement is executed by the said party of the second part with all of such possible proceedings by creditors at his own risk. It is further understood and agreed, however, that the party of the second part shall have the right to negotiate with any of the said creditors to settle, discharge, compromise or in any other manner adjust the creditor's claims or any of them, so as to avoid any proceedings that may otherwise be taken by the said creditors against the said corporation or its said properties for the collection of said creditor's claims, or any of them.''

The corporation was organized as provided for in the agreement, and is the defendant Calaveras. On April 15, 1926, Sears made a written offer to assign the option agreement to Calaveras in exchange for the balance of its stock and $20,000 of its 8 per cent convertible notes. Calaveras accepted the offer, and Sears' rights in the agreement vested in the corporation. In March, 1927, Victor deeded the property to Calaveras, and Sears and Victor received the stock of Calaveras, in the proportions set forth.

In October, 1928, the defendant Clara P. De Mota became the holder of the two notes originally given by Victor to Manuel Estate Company, which notes were then in default. Proceedings to foreclose the deeds of trust were instituted, whereupon this action was brought by plaintiffs. Victor admitted the allegations of the complaint and filed a cross-complaint seeking the same relief as the plaintiffs, and setting up the defense of usury. In its cross-complaint Victor al-

leged, and the court found, that Calaveras was organized to purchase and own the real and personal property referred to and to conduct the mining operations; and that the property is the principal property of that corporation. Defendants Calaveras and Calaveras Central Gold Mining Co., Ltd., admitted the allegations of the complaint; defendant Erickson contested the claim that the notes had been paid in part and asserted that the defense of usury was not available to the plaintiffs, to Victor or to the Calaveras corporations.

The trial court found that the notes were usurious, that the defense of usury was available to the plaintiffs, and that no payments had been made on the notes. It enjoined the trustee, Erickson, from selling the property under the deeds of trust for amounts in excess of the face value of the notes plus charges and fees stipulated to be in the sum of $3,750, or a total of $23,250. All of the parties appealed from the judgment. Plaintiffs and the defendants Calaveras appealed on the ground that the court erred in finding that no payments had been made on the $15,000 note; Victor as cross-complainant appealed on the ground that the court erred in finding that the defense of usury was not available to it as an original borrower still interested in the property by reason of its shareholdings in Calaveras; Erickson, the trustee, appealed on the ground that the defense of usury was not available to any of the parties.

The questions on this appeal are (1) whether the evidence is sufficient to support the trial court's finding that no payments had been made on the notes; and (2) whether the defense of usury was available to the plaintiffs, Victor or the corporations Calaveras.

With reference to the first point the state of the pleadings and the proof are of vital importance. The execution of the notes for the principal sums of $15,000 and $4,500 with interest was alleged by the plaintiffs. They also alleged that Calaveras and Sears had paid thereon in excess of $15,000. Victor alleged that Calaveras and Sears had paid thereon in excess of $10,000 and that the defendants De Mota knew of such payments when the notes were purchased in 1928. Calaveras, in its verified answer, admitted the allegations of plaintiffs' complaint that over $15,000 had been paid by Calaveras and Sears and prayed that the court determine the

balance due after crediting those payments. The answer of Calaveras was verified by Sears, its president and general manager. There was no allegation or proof that Victor had paid anything on the notes either prior to March 6, 1926, or after that time. ■ The plaintiffs and Calaveras and Victor all tendered the issue of part payment on the notes by Calaveras and Sears. The burden was upon them to prove such payments. When they presented their evidence on that issue, it must be assumed that they had or should have had available to them the testimony of the persons who had made the alleged payments on account or the records of the corporation on whose behalf the payments were made. It is true that Sears was in New York at the time of the trial, but his deposition was not taken and there was no showing that it could not have been taken. No canceled checks or books or business records of Calaveras or of Sears were produced in support of the asserted payments, and no showing was made that the customary business records had been lost or destroyed. No officer or employee of Victor or Calaveras testified that payments had been made and there was no showing why such proof was omitted. None of the plaintiffs testified in support of their allegations that payments had been made. The only proof of payments tendered by those on whom rested the burden of establishing the same was the testimony of M. H. Manuel, president of the Manuel Estate Company, which was the payee of the promissory notes. He was called as a witness for the plaintiffs. He was shown a statement dated March 15, 1928, and headed ''Manuel Estate Company . . . Victor Land & Mineral Co.'' This memorandum was produced on behalf of the plaintiffs and purported to show debits and credits on the account of the Victor Land and Mineral Company on the $15,000 note, from 1923 to 1928. It also purported to credit payments of principal and interest at various dates and to debit the unpaid interest at 1 per cent per month, plus charges for insurance, taxes, attorneys' fees, etc. The trial occurred in April, 1941. Mr. Manuel testified that he had no independent recollection of payments made on this note or of preparing the statement, but that he believed it was in his handwriting; that the statement did not refresh his recollection as to whether payments had been made; that it showed that it had been made from the records

of his corporation for the purpose of indicating the payments made on and charges against the note; that in his opinion the statement was correct; that he would not have made it if it had not been correct. He based his testimony as to payments not on his knowledge or recollection that they had been made, but on his belief that items on the memorandum were correct. He did not testify that any of the payments shown on the statement had been made, but only that "the statement shows" that the several payments had been made. When asked about the payment of particular items, he said: "Well, according to the statement here" the payments were made.

The defendant Erickson was requested by the plaintiffs to stipulate with reference to the items on the statement showing payment. He agreed to do so on condition that opposing counsel would also stipulate to the correctness of the other items on the statement. This the plaintiffs refused to do.

After interrogating Mr. Manuel the plaintiffs did not offer the statement in evidence. The defendant Erickson called Mr. Manuel as his own witness and offered the memorandum in evidence in order that the trial court might have the document as a whole before it. The plaintiffs objected on the ground that the statement "expresses the opinion and conclusion of the witness." The objection was overruled and the document was received in evidence. No records of the Manuel Estate Company were produced and no proof was tendered that any attempt had been made to find, examine or produce its books or records. All that was elicited on this subject was the statement of Mr. Manuel: "I don't know whether I have them [the company's records] in detail or not—I don't know whether I could find them, it is so long ago."

With the foregoing evidence before it the trial court found "that there is considerable doubt as to what if any payments were made on account of the aforesaid promissory notes or either of them and the court therefore finds that nothing has been paid on account of the aforesaid notes or either of them."

In substance the trial court found and concluded that the plaintiffs and those equally charged with them in sustaining the burden had not proved payment by a preponderance of evidence. The problem here is not whether the appellants on the issue of payment failed to prove their case by a pre-

ponderance of the evidence. That was a question for the trial court and it was resolved against them. The question for this court to determine is whether the evidence compelled the trial court to find in their favor on that issue. These appellants contend that the testimony of Mr. Manuel was uncontroverted and that it required a finding in their favor. It may be assumed that his testimony was uncontradicted and unimpeached, but it would not necessarily follow that it was of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding in favor of payment. In the first place the testimony of Mr. Manuel independently of the memorandum was uncertain and obviously insufficient to establish payment. He had no recollection of payments having been made and the memorandum did not refresh his recollection. Secondly, the memorandum was secondary evidence concerning which the trial court might properly conclude that primary evidence of the facts of payment was within the power of these appellants to produce and that they had not done so. The officers or employees of the appellant corporations who might have made such payments did not testify and their failure to testify either in person or by deposition was not explained; nor was their failure to produce the books of these corporations accounted for. From these facts the trial court was entitled to infer that the primary evidence, if produced, would have been adverse. (Code Civ. Proc., § 1963, subd. 6.)

But the plaintiffs and the appellant corporations assert that the memorandum was introduced in evidence by the trustee; that although they objected to its introduction on other grounds no objection was made on the ground that it was secondary evidence or that a proper foundation had not been laid, and that therefore the trustee was bound by it. However, a reference to the circumstances of its receipt in evidence, above narrated, discloses at least two reasons why the trial court was not bound to apply the rule invoked or itself be required to hold the evidence sufficient to constitute proof of payment. One was the uncertain and unsatisfactory character of the testimony of Mr. Manuel and the other was the secondary character of the memorandum introduced. No other evidence on the issue of payment was offered. In view of this uncertainty and of the weakness of the memoran-

dum as secondary evidence when primary evidence of its contents, so far as the record shows, was available to the plaintiffs, it may not properly be concluded that the trial court was compelled to find in favor of the plaintiffs and the defendant corporations on the issue of payment.

As to the second point, it is conceded that the question of usury was not in the minds of any of the parties at the time of the acquisition of the interests of Victor and Sears by Calaveras. It was not until some time after the decision of this court in the case of *Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609 [254 P. 956, 255 P. 805, 53 A.L.R. 725], that the notes were recognized as usurious. It cannot be said that the parties to the agreement intended either to waive or to transfer the defense of usury, since the availability of such a defense was not then within their knowledge. Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts. (*Wienke* v. *Smith,* 179 Cal. 220, 226 [176 P. 42] ; 25 Cal.Jur. 926.) The parties did not know that the notes were usurious at the time they entered into the 1926 agreement, and the agreement cannot be interpreted as imputing to the parties an intention not within their contemplation at the time of the execution of the same.

The trial court found that the defense of usury was available to the plaintiffs. The defendants Victor and Calaveras contend that the defense should have also been found available to them.

 Victor claims the right to assert the defense of usury on the ground that it is the original borrower and still interested in the property by reason of its interest in Calaveras, and Calaveras asserts its right as the successor of the original borrower. The consideration for the transfer of the property from Victor and Sears to Calaveras was the issuance to them of the shares of stock of Calaveras, and the assumption of Victor's obligations. Victor did not receive a cash consideration for the property, but accepted shares of stock. This distinguishes the case from those in which the seller accepted a price for the property from which was deducted the amount due under the obligation, thereby waiving the defense of usury, and requiring the purchaser to pay the agreed price. (*Ames* v. *Occidental Life Ins. Co.,* 210 Cal. 271 [291 P. 182] ;

*Matthews* v. *Omerd,* 140 Cal. 578 [74 P. 136] ; *Esposti* v. *Rivers Bros., Inc.,* 207 Cal. 570 [279 P. 423].) Here, Victor and Sears transferred to the newly created corporation their interest in the real property and the option agreement. Their entire interest passed to the corporation and they acquired all of the stock of the corporation in return. By this transaction the corporation was substituted in the place of Victor and Sears. In the case of *Western States Acceptance Corporation* v. *Frank D. Tuttle, Inc.,* 210 Cal. 51 [290 P. 574], it was pointed out that the corporation defendant was the alter ego of Tuttle, the borrower, and the defense of usury was held available to it. The same rule should apply and the defense be held available where two persons have merged their holdings into a corporate entity. (*Greengard* v. *Katz,* 270 Ill.App. 227; *Chas S. Riley & Co.* v. *W. T. Sears & Co.,* 154 N.C. 509 [70 S.E. 997].) The transaction is one where, as between the parties, the seller remains interested in the property, and to enforce the usurious obligation would be to destroy or impair the property interests so retained.

Defendant Erickson contends that Victor did not allege in its cross-complaint that it still owned the shares of stock of Calaveras issued to it. The evidence showed and the court found that the 150,276 shares "were issued and delivered" to Victor in accordance with the contract of March 6, 1926, and the remainder to Harry Sears. One witness (counsel for Victor) testified that Victor was still interested in Calaveras and in the property. There is nothing in the record to indicate that Victor was not the owner of the stock at the time of the commencement of the action. Under such circumstances we think it is sufficiently established that it was the owner of the stock at the time. As such a shareholder in Calaveras, there can be no question but that a sale of the property for the amount of the notes and usurious interest would adversely affect Victor through a reduction in the value of its stock. By the agreement, Calaveras had the right to settle, discharge, compromise, or in any other manner adjust the creditors' claims "so as to avoid any proceeding that may otherwise be taken by said creditors against the said corporation or its said properties for the collection of said creditors' claims, or any of them." Any settlement or adjustment made by the new company with the creditors of

Victor whereby any creditor accepted less than the amount claimed would enhance the value of Victor's stock and necessarily result in a direct benefit to that corporation. It would be to the direct financial interest of Victor that the defense of usury be held available to it, and to Calaveras, its successor.

The plaintiffs Montreeville and Anderson are judgment creditors of Victor and Calaveras, respectively, and the indebtedness represented by the judgments was incurred prior to the execution of the deeds of trust sought to be foreclosed. The obligations were included in the list of creditors of Victor. The judgments in favor of these plaintiffs provided that the payment of either judgment should be payment *pro tanto* of the other. These creditors never lost the right to look to Victor or to its properties for payment. If these plaintiffs are permitted to assert the defense of usury it will be to the immediate benefit of the original borrower, Victor. By the agreements with Sears and Calaveras, plaintiffs Montreeville and Anderson were brought into privity with Victor and Calaveras, and to that extent the agreement was for the benefit of these creditors. It is established law that one not a party to an usurious contract may not attack it unless he is injured by it. (*Zimmerman* v. *Boyd,* 97 Cal.App. 406, 408 [275 P. 509] ; *Matthews* v. *Omerd, supra.*) In the present case it is clear that plaintiffs Montreeville and Anderson would be injured. Their only opportunity to receive payment of their judgment is from the assets of Victor or Calaveras, on which they have a judgment lien. The preservation of the property through the defense of usury is directly to their benefit.

Defendant Erickson claims that under the contract Calaveras was to pay the obligation with interest, and that this provision would exclude the right to assert the defense of usury. It has been shown, however, that the agreement also provided that Calaveras should have the right to negotiate with any of the creditors to settle, discharge, compromise or in any other manner adjust the creditors' claims. Taken as a whole, the agreement served to list the obligations of Victor and to authorize Calaveras to contest any or all of them. It did not deprive Calaveras of the right to assert any defense to any of those obligations. It is therefore concluded

that the defense of usury was not only available to the plaintiffs but to the defendants Victor and Calaveras as well.

The judgment is affirmed.

Gibson, C. J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.