Filed 3/16/16  In re A.A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.A., et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.A., <br><br> Defendant and Appellant. | F072126 <br><br> (Super. Ct. No. 13CEJ300177) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Mary Dolas, Judge.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Gomes, Acting P.J., Detjen, J. and Franson, J.

M.A. (mother) appeals from a juvenile court order terminating her parental rights and selecting adoption as the permanent plan (Welf. & Inst. Code, § 366.26)[1] for her two- and one-year-old daughters.  Mother contends the juvenile court erred in not applying the exception to adoption found in section 366.26, subdivision (c)(1)(B)(i), (hereafter "the beneficial relationship exception").  The beneficial relationship exception pertains where the evidence supports "a compelling reason for determining that termination would be detrimental to the child [because] [t]he parents maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  We affirm.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings were initiated in June 2013, when the Fresno County Department of Social Services (department) took then three-month-old A.A. into protective custody after mother, then 15 years old and a juvenile dependent, broke her mother's window and left with A.A.  The reporting party stated that mother was "rough" with A.A. and was receiving mental health services but was out of control and aggressive, and repeatedly ran away from home.  Mother had been removed from her parents because of her out of control behavior and placed with her mother on family maintenance services.  At the time, mother was being treated for bipolar disorder.

The juvenile court ordered A.A. detained pursuant to a dependency petition filed by the department, and ordered the department to offer mother parenting classes, substance abuse and mental health evaluations, and random drug testing.  The court also ordered supervised visits to occur a minimum of twice a week.  The department placed A.A. in foster care.

---

[1]     All statutory references are to the Welfare and Institutions Code.

In September 2013, the juvenile court sustained the petition and adjudged A.A. a dependent child. (§ 300, subd. (b).) In October 2013, the department filed a section 388 petition asking the juvenile court to order unsupervised visits and grant it discretion to increase visitation so that mother could bond with A.A. Mother's ability to control her temper and engage A.A. had improved significantly. The court granted the petition.

In November 2013, the juvenile court exercised its dependency jurisdiction over A.A. and ordered the department to provide mother the services previously offered plus a domestic violence evaluation. As a result of the domestic violence evaluation, mother was referred for an anger management program. The court also found Terrance H. to be A.A.'s biological father and denied him reunification services. The court set the six-month review hearing for May 2014.

Meanwhile, in February 2014, mother gave birth to another daughter whose initials are also A.A. We will refer to this child as "the baby." The department took the baby into protective custody because mother was not taking her psychotropic medication and continued to act out aggressively. The department placed the baby with A.A. in foster care. The identity of the baby's father was unknown.

The juvenile court exercised its dependency jurisdiction over the baby and ordered mother to complete the same services it ordered in A.A.'s case.

In June 2014, the juvenile court granted a section 388 petition filed by the department asking the court to limit mother's visitation to supervised visits. The department's request was prompted by an incident in late May 2014, when mother became upset and left school. She had not returned or made contact with the social worker.

Mother received reunification services for both children until May 2015. During that time, she completed most of her court-ordered services. In addition, she was evaluated by a psychologist who opined that she did not pose an insurmountable risk to the children, and her therapist questioned whether she had bipolar disorder. Mother's

3

parenting skills had improved and she was loving toward the children. However, she struggled to parent both children during her four-hour supervised visits and expressed concern about her ability to handle them. At the same time, the children's foster mother was interested in adopting them.

In January 2015, the juvenile court conducted a combined 12- and 18-month review hearing on the department's recommendation to terminate mother's reunification services. Mother appeared with her attorney and submitted the matter on the department's reports. The court terminated reunification services and set a section 366.26 hearing for May 2015.

In its report for the section 366.26 hearing, the department recommended the juvenile court terminate mother's parental rights and order adoption as the children's permanent plan. The department reported that the children were doing well in the care of their prospective adoptive mother and appeared to share a parent/child relationship with her. In contrast, they enjoyed seeing mother but had only minimal parent/child interactions with her. Most of their interactions consisted of playtime. In addition, mother had not demonstrated the ability to provide them structure, nurturance or safety and often directed them to their "mommy," referring to the prospective adoptive mother, when she was unable to control them.

The juvenile court continued the section 366.26 hearing and conducted it in August 2015 as a contested hearing. In July 2015, Jerrell R. appeared for the first time, claiming to be the baby's father. At that point, the court determined him an alleged father.

Mother testified she had been visiting her daughters once a month for an hour since May 2015. Prior to that, she visited them twice a week for four hours. The children were happy to see her and followed her whenever she left the room. During their visits, mother took them out or stayed in and watched movies or played games with them. She also changed their diapers and fed them. Mother wanted the court to know

4

that she objected to having her parental rights terminated and that she could provide for the children. She had a full-time job and would have her own apartment within six weeks.

Social worker Miranda Martinez testified she observed three visits between mother and the children, the last one in early May 2015. She said the children viewed mother as a friendly visitor, explaining that they smiled and greeted her but then played on their own. She did not observe a strong parent/child attachment. Mother told Martinez the baby did not know her and her time spent with A.A. was more play than nurturing. Martinez disagreed that mother visited the children twice a week, stating that mother missed half of the visits. She also said that mother became frustrated after an hour into the two visits she supervised and, according to the visitation logs, mother was often frustrated. When the children acted up, she called the foster mother to come get them early. Even when the children were behaving in an age-appropriate manner, mother got "really flustered" and asked what time it was.

Martinez further testified that she was concerned about mother's mental health. She explained that another social worker oversaw mother's medications so she did not know what medications mother was prescribed. She was aware, however, that mother had been diagnosed with posttraumatic stress disorder and general depression. She testified the children were doing wonderfully with their prospective adoptive mother and shared a close sibling relationship. She did not believe it would be detrimental to them to terminate mother's parental rights. Rather, she believed it would be detrimental to them not to terminate her rights.

Mother, recalled to the stand, denied being frustrated and wanting to leave visits early. She said she only asked to leave visits early when she had somewhere to be afterwards and needed to catch the bus. On those occasions, she only asked to leave five minutes early. She disagreed that she did not fill a parental role in her daughters' lives.

5

At the conclusion of the hearing, the juvenile court found that the children were adoptable and that mother failed to meet her burden of proving that the beneficial relationship exception applied. The court found that adoption was the appropriate permanent plan for the children and terminated mother's parental rights, as well as those of Terrance and Jerrell.

This appeal ensued.

## DISCUSSION

Section 366.26 governs the proceedings at which the juvenile court must select a permanent placement for a child adjudged its dependent. If the court determines it is likely the child will be adopted, the statute requires the court to terminate parental rights. (§ 366.26, subd. (c)(1).) The court's prior finding that it would be detrimental to return the child to parental custody, and its order terminating reunification services, constitute a sufficient basis for terminating parental rights unless the court finds that one of the six exceptions specified in section 366.26, subdivision (c)(1)(B) would render termination of parental rights detrimental to the child. The party seeking to establish the existence of one of the section 366.26, subdivision (c)(1) exceptions bears the burden of producing the evidence. (*In re Megan S*. (2002) 104 Cal.App.4th 247, 252.)

When a juvenile court concludes that the party with the burden of proof did not carry the burden and the court rejects a detriment claim and terminates parental rights, the first issue on appeal is whether the evidence compels a finding for appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570-571.) "Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.'" (*In re I.W*. (2009) 180 Cal.App.4th 1517, 1528.) If appellant prevails, then the next question is whether the existence of that relationship constituted a "compelling reason for determining that termination would be detrimental" (§ 366.26, subd. (c)(1)(B)), thus rendering the juvenile court's termination order an abuse

6

of discretion. (*In re Bailey J.* (2010) 189 Cal.App.4th 1308.) We conclude mother failed to establish the existence of a beneficial relationship as a matter of law.

Mother contends the beneficial relationship exception applied because she maintained regular visitation and contact with the children and because she shared an emotional bond with them and occupied a parental role in their lives. She points to evidence that she and the children hugged and kissed throughout their visits and that she cared for them in a way that a parent would by changing their diapers and feeding them.

The juvenile court did not make an express finding as to whether mother maintained regular visitation and contact with the children.[2] However, even if it had found that she did, mother failed to prove the second prong of the exception; i.e., that the children would benefit from continuing their relationship with her. "To meet the burden of proving the section 366.26, subdivision (c)(1)(B)(i) exception the parent must show more than frequent and loving contact, an emotional bond with the child, or pleasant visits—the parent must show that he or she occupies a parental role in the life of the child." (*In re I.W.*, *supra*, 180 Cal.App.4th at p. 1527.)

A.A. was removed from mother's physical custody in June 2013 at the age of three months and the baby was removed in February 2014 at birth. By the time of the section 366.26 hearing in August 2015, both children had spent their entire lives, for all practical purposes, in the care of their prospective adoptive mother. Their only contact with mother was during visitation which had been supervised for over a year. Further, though mother and the children were very affectionate and loving together, there is no evidence that they viewed her as a parental figure.

---

[2] The juvenile court acknowledged that mother maintained "somewhat regular" visitation and, at times, "more consistent" contact. However, the court's focus in finding the beneficial relationship exception did not apply was on the absence of a parental role or strong emotional attachment.

Even if mother had established a beneficial relationship, she would be hard-pressed on this evidence to show that terminating her parental rights would be detrimental to the children.  There was indisputable evidence that the children were adoptable and that their prospective adoptive mother wanted to adopt them.  Further, there was no evidence that terminating parental rights would be detrimental to the children.  Mother did not, for example, offer a bonding study or other evidence showing that severing her parental rights would have a deleterious effect on the children.  And Martinez told the court not only that terminating parental rights would not be detrimental to the children, but that *not* terminating them would be.

Mother relies on *In re Amber M*. (2002) 103 Cal.App.4th 681 (*Amber M.*) to support her contention that she established the beneficial relationship exception.  But the following brief description of *Amber M.* demonstrates that *Amber M.* offers no support for mother's claim of error.  "In [*Amber M.*], the court reversed termination of parental rights where a psychologist, therapists, and the court-appointed special advocate uniformly concluded 'a beneficial parental relationship … clearly outweigh[ed] the benefit of adoption.'  Additionally, two older children had a 'strong primary bond' with their mother, and the younger child was 'very strongly attached to her.'" (*In re J.C.* (2014) 226 Cal.App.4th 503, 533.)  No such evidence of a bond or the existence of a beneficial relationship was presented in this case.

We conclude the evidence in this case does not compel a finding as a matter of law that mother had a beneficial relationship with the children.  Consequently, the beneficial relationship exception to adoption does not apply and the juvenile court did not err in terminating mother's parental rights.  Thus, we affirm.

## DISPOSITION

The August 7, 2015 order approving adoption as the permanent plan for A.A. and the baby and terminating mother's parental rights is affirmed.

8