Filed 9/15/22  Herriott v. Herriott CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAULA HERRIOTT, | B311922 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20TRRO00819) |
| v. | |
| PARKER RICHARD HERRIOTT, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of
Los Angeles County, Glenda Veasey, Commissioner.  Affirmed.
Paula Herriott, in pro. per., for Plaintiff and Appellant.
No appearance for Defendant and Respondent.

————————————————

Paula Herriott (Paula) appeals from an order denying her request for a civil harassment restraining order against her uncle, respondent Parker Richard Herriott (Parker).[1] We find no error, and thus we will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Based on the sparse appellate record before us, we glean the following facts relevant to this appeal.

Paula's father, Paul Herriott (Paul), died in June 2021. After Paul's death, his brother Parker became the trustee of Paul's trust. Among the trust property was an apartment building in which Paula lives with her sister Ruth Herriott (Ruth) and her mother Alicja Herriott (Alicja)

On December 10, 2020, Paula filed a request for a civil harassment restraining order against Parker on behalf of herself, Alicja, and Ruth. In support, she said: "We fear for our lives. Parker is tampering with the cars, inflicting fear and threatening he will hurt himself on the property and blame us." In her application for a restraining order, she described the following incidents of alleged harassment:

"On October 15, 2020, Paula and Alicja were outside apartment 123 24th Street [*sic*], instructing tree trimmers to cut the branches from the trees, when Parker shows up and demands to stop all the works. Even though Parker has 'stay away' court–restraining order against Alicja he is very 2 feed [*sic*] next to her. Parker demands from Alicja to leave her premises. Hermosa

---

[1]     Respondent has not appeared in this action.

        Because the parties have the same last name, we will refer to them by their first names.

2

Beach Police Department is called and Parker is escorted to his car." [¶] . . . [¶]

". . . On April 21, 2020, Parker Herriott came in very close distance with Respondent [*sic*] at her residency address . . . and pushed a piece of paper into my hand. When I asks [*sic*] Parker to leave the premises, he declined to do so until my mother make[s] a call to Hermosa Beach Police Department.

". . . On September 7, 2020 Parker came to 123–24th Street . . . and remove[d] a working man who [was] repairing awning on the balcony of my mother's apartment.

". . . Parker hired two people to spy on me and my mother . . . .

". . . Harassing my employees on my property."

On January 19, 2021, plaintiff filed a supplemental declaration in which she said as follows:

—Mark Wershoven (Wershoven) and Lori Thibodeaux (Thibodeaux) live in an adjoining apartment unit and pay less than fair market rent. Paula has observed a "sliver" in Wershoven and Thibodeaux's window blinds, "which opening was big enough for the surveilling [*sic*] or computer cameras."

—On July 29, 2020, Thibodeaux entered Paula's apartment without permission.

—On September 22, 2020, Paula hired a company to install an awning over her balcony. Parker threatened to call the police if the installers did not stop their work. Later that day, Thibodeaux told Ruth that Wershoven had notified Parker about the installation of the awning.

—On October 15, 2020, Paula hired people to trim trees around the property. Parker directed the tree trimmers to stop

3

working; he left the premises only after being directed to do so by police.

 —In September 2020, someone placed sugar or honey in the gas tank of Ruth's truck, damaging it.

 —On November 18, 2020, someone damaged Alicja's vehicle by removing a part connecting the gear shift to the transmission.

 —On December 6, 2020, Parker and Wershoven jeered at and filmed a woman Paula hired to sweep the apartment premises.

 —Wershoven and Thibodeaux collected information for Parker about the activities of Paula and her family.

 —The actions of Parker, Wershoven, and Thibodeaux caused Paula, Alicja, and Ruth fear for their safety.

 On January 19, 2021, Paula filed exhibits in support of her request for a restraining order. The exhibits included a law enforcement incident history report, copies of text messages between unidentified persons, a July 29, 2020 letter from Alicja to "Mark and Lori," a 60-day notice of termination of tenancy issued by Paula to "Laurie Thibodeaux and all other persons in possession of the [property]," car repair records, and three photographs.

 Parker filed opposition to the request for restraining order. He said the apartment building was trust property, he was the only person with authority to authorize maintenance to the building, and he did not hire Wershoven and Thibodeaux to spy on Paula and her family. Further, prior to Paul's death, Paul and Parker obtained a restraining order protecting them from Alicja. Parker therefore asked that Paula's request for restraining order be denied.

The parties appeared for a hearing on February 26, 2021. The court noted that there was a pending probate action between the parties, and it asked Paula why she believed it was harassment for Parker, the apartment building's trustee, to stop work he had not authorized on the property. The court also asked what evidence Paula had that Parker had vandalized her family's cars or surveilled her. Paula said she had a witness who had not been able to appear at the hearing because it had been continued; she then admitted that she did not have a witness who had observed Parker vandalizing the family's cars. She did not ask to call any witnesses about any of the other issues raised in the restraining order request.

After a hearing, the court denied the request for a restraining order. The court noted that it had not been provided with any evidence that Parker had vandalized Alicja's or Ruth's cars. As to the remaining claims, the court found that they did not entitle Paula to a civil harassment restraining order. It explained: "[T]here is a big conflict going [on] over in the probate court whereby . . . the members of the family on your side are . . . trying to get [Parker] removed as the trustee of the trust of all of these pieces of property. And [Parker] and his attorney have had to go into the probate court [to get] a restraining order against your side of the family from collecting the rents and things on the property. . . . [¶] . . . [¶] . . . All of this is about the control of the property. [¶] . . . [¶]

"Now, [when] Mr. Wershoven was repairing something in your apartment, and apparently your point of view is that his partner, Ms. Thibode[a]ux, came into the apartment, in the bathroom, where he was fixing the plumbing, and she didn't have your permission. And therefore she is harassing you. I don't

5

agree that that would be harassment. And [the] other thing you are alleging is that Mr. Wershoven and Ms. Thibode[a]ux are spying on you on behalf of [Parker]. If [Parker] wants some of the other tenants in the property to keep an eye out, and if they choose to call and inform him when they see things going on, on the property that they don't believe have been authorized by [him], they have an absolute right to do that. And he has an absolute right to ask them to do that."

Paula timely appealed from the February 26, 2021 order.

## DISCUSSION

Paula contends the trial court abused its discretion by denying her request for a civil harassment restraining order against Parker. We find no error.

California Code of Civil Procedure[2] section 527.6, subdivision (a) provides that a person who has suffered harassment may seek an order prohibiting harassment. "Harassment" within the meaning of this section is "[1] [U]nlawful violence, [2] a credible threat of violence, or [3] a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (*Id.*, subd. (b)(3).)

A "credible threat of violence" is "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).) A "course of conduct" is "a pattern of conduct composed of a series of acts over a period of time,

---

[2]     All subsequent statutory references are to the Code of Civil Procedure.

6

however short, evidencing a continuity of purpose." (*Id.*, subd. (b)(1).) To be actionable, a course of conduct "must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (*Id.*, subd. (b)(3).)

At a hearing on a request for a restraining order, the court "shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).) " ' "Clear and convincing" evidence requires a finding of high probability.' (*In re Angelia P.* (1981) 28 Cal.3d 908, 919.)" (*Russell v. Douvan* (2003) 112 Cal.App.4th 399, 401.)

On appeal from an order granting a restraining order, an appellate court will review the issuance of the order for an abuse of discretion, and the factual findings necessary to support the order for substantial evidence. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.) However, because Paula is appealing from the *denial* of a request for a restraining order—and because she bore the burden of proof below—"the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*Roesch v. De Mota* (1944) 24 Cal.2d 563, 570–571; *Caron v. Andrew* (1955) 133 Cal.App.2d 402, 409.) Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' (*Roesch v. De Mota*, *supra*, at p. 571.)" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528,

disapproved on other grounds in *Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1003, fn. 4.)

The evidence before the trial court did not compel a finding for Paula as a matter of law. The trial court correctly concluded that there was no evidence of the most serious of Paula's claims—that Parker vandalized Alicja's and Ruth's cars. While there was some evidence that the cars were damaged, Paula presented *no* evidence that Parker was responsible for the damage. The remaining claims—that Parker stopped workers from trimming trees and erecting an awning, asked Wershoven and Thibodeaux to inform him if Paula and her family attempted to have work done at the apartment complex, and filmed a woman Paula hired to sweep the apartment complex—were insufficient to support a restraining order. The trial court was well within its discretion in concluding that none of these actions was an act of or a threat of violence, and none of these actions would place a reasonable person in fear for her own or her family's safety. (§ 527.6.)

Paula contends that the trial court abused its discretion by refusing to allow her "family members and friends" to testify at the hearing. However, when she was asked at the hearing whether she had any witnesses who saw Parker vandalize the family's vehicles, she first said that she had a witness who had not been able to attend, and then that she had no witness to the alleged vandalizing of the vehicles. There is, moreover, no indication in the record that Paula had witnesses she wished to call on any of the other issues she raised in her application for a restraining order. Accordingly, Paula did not preserve the issue for appeal. (See *People v. Allen* (2008) 44 Cal.4th 843, 872, fn. 19 [to preserve a contention that evidence should have been

admitted, a party must make an offer of proof that "make[s] clear the substance of the proffered testimony."].)

For the foregoing reasons, the trial court did not err by denying the request for a restraining order.

## DISPOSITION

The order denying the request for a restraining order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.